**Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellants,**

v.

**ELECTRO–SCIENCE INVESTORS, INC., et al., Appellees.**

**No. 12149.**

Court of Civil Appeals of Texas, Austin.

May 1, 1974.

———◆———

John L. Hill, Atty. Gen. of Tex., Robert Shaw MacIntyre, Jr., Gordon C. Cass, Asst. Attys. Gen., Austin, for appellants.

Richard L. Jackson, Johnson, Bromberg, Leeds & Riggs, Dallas, for appellees.

PHILLIPS, Chief Justice.

This suit was brought by Electro-Science Investors, Inc. against the Comptroller of Public Accounts to challenge the Comptroller's computation of its franchise tax under Subsection (d) of Article 12.02(1), Taxation-General, Vernon's Annotated Texas Statutes. Electro-Science Investors, Inc. sought recovery of the taxes it had paid under protest. At the conclusion of a summary judgment proceeding, the trial court awarded Electro-Science, Inc. the entire amount of tax in question. We affirm the judgment.

The Comptroller, represented by the Attorney General, has perfected his appeal to this Court and is before us on three points of error.

Appellants' first point contends that the trial court erred in its interpretation of the word "net" in the phrase, "shall include only the net gain from such sales," in Article 12.02(1)(d), of the franchise tax statutes, Taxation-General, Vernon's Annotat-

ed Texas Statutes. We overrule this point. That statute reads in part:

"Art. 12.02 Allocation Formula

(1)(a) Each corporation liable for payment of a franchise tax shall determine the portion of its entire taxable capital taxable by the State of Texas by multiplying same by an allocation percentage which shall be the percentage relationship which the gross receipts from its business done in Texas bear to the total gross receipts of the corporation from its entire business.

\*   \*   \*   \*   \*   \*

"(d) For the purpose of this Article, the term 'total gross receipts of the corporation from its entire business' shall include all of the proceeds of all sales of the corporation's tangible personal property, all receipts from services, all rentals, all royalties and all other business receipts, whether within or outside of Texas. Provided, however, that, as to the sale of investments and capital assets, the term 'total gross receipts of the corporation from its entire business' shall include only the *net* gain from such sales." (Emphasis added)

In 1968 appellees were assessed $9,842.79 additional franchise tax, penalty and interest. Appellees paid the additional tax under protest and proceeded with this suit to recover the tax.

■ The transactions in question in this litigation are the "sale of investments and capital assets" within sub-division (d) of the cited statute. The question arises as to the computation of the "net gain from such sales" for purposes of arriving at the allocation formula set forth in sub-division (1)(a).

Appellants contend that "net gain" refers in fact to only the *gain* of the appellees, and as such should be computed as the receipts from its sale, less its original cost, depreciation, applicable expenses, etc., i. e., its "base." Appellants argue that Article 12.02(1)(d) was designed to accurately represent the amount of business done in Texas; that the Comptroller's interpretation is correct because it is the most accurate representation of the extent of the corporate taxpayers' business in the state; that Article 12.02(1)(d) utilizes only gains from the sale of capital assets and securities when determining total gross receipts for franchise tax purposes. Losses are also utilized, but they are deducted from the corporation's surplus. This, contends the Comptroller, allows the corporate taxpayer to take advantage of its sale losses as well as its gains when computing its franchise tax; that to allow the deduction of losses from gains would not accurately represent the amount of a corporate taxpayer's business. The Comptroller then states: "That concept [i. e. that of appellees], subtracting loss from gain to achieve net gain, is appropriate perhaps in the computation of one's federal income tax, but it is inappropriate for computing a corporation's franchise tax in Texas."

Appellees contend that appellants' method of computation shows only the "gain" on a particular sale and that to have a "net gain" (or for that matter net loss) there are assumed to be a series of sales or transactions whereby either a gain or a loss can occur, so that by evaluating or comparing the results of such sales or transactions, a "net gain" can be determined. If such were not the case, the word "net" in the statute would be of no effect, since "gain" from such sales would accomplish the result sought by appellants without the inclusion of the modifying term "net."

■ The statute does not provide us with a definition of net gain. In a case handed down this day, No. 12,130, and styled Texas Pipe Line Company v. Calvert, 510 S.W.2d 168, we referred to Section 1 of Article 10, Vernon's Ann.Civil Statutes, wherein the Legislature set forth rules of construction to be applied to all civil statutes. The first of these rules is that, "The ordinary signification should be applied to words . . ." This has been referred to as the "plain meaning" rule

which, in effect, directs a court to enforce an act as written.

Webster's New International Dictionary, Second Edition, defines "net": "to produce or gain as clear profit; as he *netted* a thousand dollars by the operation." By the plain meaning of the words in the statute we must conclude that net gain requires that gains and losses be offset against one another in order that a net figure be obtained. There is no ambiguity in the language of the statute in question, and there is no doubt as to what its ordinary meaning is. Steakley v. West Texas Gulf Pipe Line Company, 336 S.W.2d 925 (Tex.Civ. App.1960, no writ). As well-intentioned as the interpretation chosen by the Comptroller may be, we have no choice but to set it aside.

In view of the position we have taken in this case, we need not discuss appellants' remaining points which concern established administrative procedures.

The judgment of the trial court is in all things affirmed.