**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

v.

**KING RESOURCES COMPANY, Appellee.**

**No. 5763.**

Court of Civil Appeals of Texas, Waco.

Aug. 25, 1977.

John L. Hill, Atty. Gen., David M. Kendall, 1st Asst. Atty. Gen., Martha E. Smiley, R. L. Lattimore, Asst. Attys. Gen., Austin, for appellants.

E. Richard Criss, Jr., Brown, Maroney, Rose, Baker & Barber, Austin, for appellee.

HALL, Justice.

King Resources Company is a Maine corporation engaged in the oil and gas production business in Texas. It brought this suit against the State Comptroller and other involved officials to recover a deficiency franchise tax assessed against it for the

year 1970 which was paid under protest. At issue is the interpretation of the term "net gain" in Article 12.02(1)(d), V.A.T.S. Tax-Gen., and its application to the accounting system used by plaintiff upon which it figured its franchise tax for the year in question. After a hearing without a jury, judgment was rendered awarding plaintiff recovery of the deficiency assessment. Defendants appeal. We affirm.

The pertinent parts of the statute in question provide as follows:

"Art. 12.02   Allocation Formula

"(1)(a) Each corporation liable for payment of a franchise tax shall determine the portion of its entire taxable capital taxable by the State of Texas by multiplying same by an allocation percentage which shall be the percentage relationship which the gross receipts from its business done in Texas bear to the total gross receipts of the corporation from its entire business.

. . . . .

"(d) For the purpose of this Article, the term 'total gross receipts of the corporation from its entire business' shall include all of the proceeds of all sales of the corporation's tangible personal property, all receipts from services, all rentals, all royalties, and all other business receipts, whether within or outside of Texas. Provided, however, that, as to the sale of investments and capital assets, the term 'total gross receipts of the corporation from its entire business' shall include only the *net gain* from such sales." (Emphasis added).

Since its inception, plaintiff has accounted in its books for its oil and gas properties under an accounting method known as "full-cost accounting system." This method of accounting for oil and gas properties is used and reflected in plaintiff's books for any purpose consistent with those records, including financial reports, income tax, and franchise tax purposes. The franchise tax report submitted by the company for 1970, and for all prior years, were made in accordance with this accounting policy for all its oil and gas properties.

Under the method of accounting used by plaintiff, all costs of exploration, acquisition, and development incurred by plaintiff in finding oil and gas reserves in North America (excluding the Canadian Arctic) are capitalized into a full-cost pool. The items capitalized include all costs incurred in finding, leasing, acquiring and carrying these properties, as well as the cost of nonproductive exploration, dry hole costs, certain abandonments, and general and administrative expenses directly related to exploration and development activities such as the expenses of plaintiff's land and exploration departments. Annually, an average finding and developing cost per unit of reserve is determined by dividing the full-cost pool by plaintiff's total reserve. This average per-unit cost is used in determining the amortization of the full-cost pool as reserves are produced. Similarly, it is used as a basis for allocating costs when properties are sold.

In the words of plaintiff's controller, the accounting system used by plaintiff "is based on the premise that the reserves discovered by the Company must bear an allocable portion of nonproductive exploration costs, the general costs capitalized into the full-cost pool, and the property's own direct costs." It is evident, therefore, that under this system the terms "net gain" or "net loss," when applied to the proceeds from the sale or disposition of producing oil and gas properties means the gain or loss realized by plaintiff after deducting from the sale proceeds the direct cost of the asset sold and its allocated share of general and nonproductive costs and expenses from the full-cost pool, whether such costs and expenses are directly related or not to the asset sold.

In 1970, plaintiff sold certain developed oil and gas properties located both in and out of Texas for $10,838,822.56. Based on plaintiff's accounting system, the disposition of these assets was recorded in its 1970 books as follows:

|  | Everywhere | Texas |
|---|---|---|
| Proceeds of sales of assets (credited to reserve for amortization) | $10,838,822.56 | $6,327,751.11 |
| Less: |  |  |
| Direct costs of assets sold (credited to full-cost pool and charged to reserve) | 4,411,089.58 | 2,081,253.73 |
| Allocated [per unit] share of nonproductive and general costs (credited to full-cost pool and charged to reserve) | 8,853,948.00 | 6,227,855.00 |
| Loss on disposition | (2,425,251.02) | (1,981,357.61) |

This accounting shows the reduction of the receipts from the sales by costs and expenses not directly related to the properties sold. Under it there was no gain from the sales to be considered under the allocation formula in article 12.02(1)(d) for determining plaintiff's franchise tax.

On audit of plaintiff's books, the Comptroller's position was that the "net gain" referred to in the statute must be calculated by using an "expense" accounting system under which acquisition cost of an asset is not capitalized, but the asset is carried in the capital account in place of the cost amount expended from capital; and when the asset is sold the receipts of sale replace the asset in the capital account. Under this method, only the cost of acquisition and other expenses directly attributable to the asset are deducted from the gross receipts of the sale to determine the net gain on it for franchise tax purposes. Accordingly, the Comptroller disallowed all costs allocated by plaintiff to the sales in question except those directly related to the properties. This, in turn, reflected a gain on the sales and resulted in the deficiency assessment in dispute.

The defendants contended on the trial, as they do here, that the net gain on capital sales referred to in the statutory allocation formula may only be determined by using the direct expense accounting system upon which the Comptroller's audit was based. They argue that inasmuch as the term "net gain" from the sales of capital assets is arbitrarily incorporated in the definition of "total gross receipts" in the statute, the legislature must have intended that the balance of the proceeds of the sales after deducting the related costs, only, would properly meet the meaning of the term; and that plaintiff's accounting system is designed to show, and only shows, "whether the *worth* or *financial condition* of the corporation as a whole was affected by such sales."

The statute does not define "net gain" as that term is used in the allocation formula, but the plain meaning of the words "requires that gains and losses be offset against one another in order that a net figure be obtained." *Calvert v. Electro-Science Investors, Inc.*, 509 S.W.2d 700, 702 (Tex.Civ.App.—Austin 1974, no writ).

Rulings issued by the Comptroller [1] provide that a company's franchise tax report "shall reflect and the tax shall be computed on the corporation's financial condition as shown in its books and records of account"; that a recalculation of franchise taxes for prior years based on later adjustments or other changes in the books may not be made unless the adjustments or changes result from actual error in entries; that if the original book entry was made in accordance with generally accepted accounting principles in effect at the time, the entry cannot be considered to be an error; and that a change in accounting methods will not support a contention of erroneous entry.

The evidence shows that the full-cost accounting system used by plaintiff is in accordance with generally accepted accounting principles. It also shows that gains and losses reflected in plaintiff's books under this system on sales of its oil and gas properties are *net* gains and losses.

---

1. On oral submission appellants stipulated that these rulings as set forth in appellee's brief are correctly stated.

Under the Comptroller's rulings, plaintiff was bound to report for franchise tax purposes under the full-cost accounting system. It could not resort to another system of accounting to compute a more favorable report.

The full-cost accounting system, used year after year as it is by plaintiff, will necessarily prove equally fair to both taxpayer and State. It satisfies the statute.

Appellants' points and contentions are overruled.

The judgment is affirmed.