# IN THE SUPREME COURT OF TEXAS

══════════
No. 14-1075
══════════

HALLMARK MARKETING COMPANY, LLC, PETITIONER,

v.

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS,
AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, RESPONDENTS

══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════════════════

**Argued December 9, 2015**

JUSTICE BROWN delivered the opinion of the Court.

This case arises from a franchise-tax protest suit Hallmark filed against the state comptroller. The Tax Code provides that "only the net gain" from the sale of investments should be included in a key component of the statutory franchise-tax formula. The comptroller, however, adopted a rule requiring businesses to include net gain *or* a net loss. As a result, Hallmark paid more than $200,000 in taxes than it believes was required, so it sued the comptroller for a refund. The trial court and court of appeals deferred to the comptroller's rule. Because we agree with Hallmark that "only the net gain" necessarily excludes a net loss, we reverse.

## I

Texas imposes a franchise tax on businesses based or operating in our state. *See* TEX. TAX CODE § 171.001. In its simplest form, franchise-tax liability is calculated by multiplying a business's taxable margin by the applicable franchise-tax rate. *See id.* § 171.002. Taxable margin is determined by multiplying a business's total margin by an apportionment factor designed to limit the franchise tax to revenue attributable to business conducted in Texas. *See id.* § 171.101. The apportionment-factor numerator consists of receipts from business conducted in Texas and the denominator consists of receipts from all business anywhere, including Texas. *See id.* § 171.106(a).

Under this formula, franchise-tax liability increases as the ratio of Texas receipts to total receipts increases. If the numerator (Texas receipts) increases but the denominator (all receipts) stays the same, receipts from Texas business make up a larger share of total receipts and franchise-tax liability increases. If, on the other hand, the numerator decreases against the same denominator, receipts from Texas business make up a lesser share of total receipts, and franchise-tax liability decreases.

In implementing Texas' statutory franchise-tax liability scheme, the comptroller adopted a rule providing that "[i]f the combination of net gains and losses results in a net loss, the taxable entity should net the loss against other receipts, but not below zero." 34 TEX. ADMIN. CODE § 3.591(e)(2). Accordingly, after auditing Hallmark's 2008 franchise-tax report, the comptroller concluded Hallmark miscalculated its apportionment factor by failing to include a net loss of more

than $628 million from the sale of investments. This loss, when included in the apportionment-factor denominator, would have lowered the denominator, resulting in a higher ratio of Texas receipts to total receipts and therefore a higher tax bill for Hallmark.

In response, Hallmark argues that the comptroller's rule conflicts with the very statute it purports to enforce. Tax Code section 171.105(b) provides that "[i]f a taxable entity sells an investment or capital asset, the taxable entity's gross receipts from its entire business for taxable margin includes *only the net gain* from the sale." TEX. TAX CODE § 171.105(b) (emphasis added). Because Hallmark incurred a net loss, not a net gain, it argues it adhered to the Tax Code by not including the net loss in its apportionment-factor denominator.

The trial court agreed with the comptroller that Hallmark should have included the net loss, and accordingly granted the comptroller's motion for partial summary judgment and denied Hallmark's. The court of appeals affirmed, concluding the comptroller's rule was entitled to deference because "net gain" in Tax Code section 171.105(b) is ambiguous. No. 13-14-00093-CV, 2014 WL 6090574, *4–5 (Tex. App.—Corpus Christi Nov. 13, 2014) (mem. op). It supposed that "'net gain' may refer to the particular gain or loss that results from each individual sale when proceeds are offset by costs" or "may instead refer to the taxpayer's cumulative gain or loss on its various investment and capital asset sales made throughout the year." *Id.* at *4.

We conclude that even if "net gain" is ambiguous as the court of appeals suggests, the ambiguity is irrelevant to this case. Here, neither party disputes that Hallmark suffered only a net *loss*. The statute requires inclusion of "only the net gain," and under no reading can "net gain" include a net loss. Accordingly, we cannot defer to the comptroller's rule requiring inclusion of a net

3

loss in Hallmark's apportionment-factor denominator because it conflicts with the plain language of Tax Code section 171.105(b).

## II

The comptroller is charged with administering the franchise tax and has broad discretion to adopt rules for its collection as long as those rules do not conflict with state or federal law. *See* TEX. GOV'T CODE § 403.011 (enumerating general powers of comptroller's office); TEX. TAX CODE § 111.002(a) (granting comptroller rulemaking power). "If there is vagueness, ambiguity, or room for policy determinations" in the language of a statute, "we normally defer to [an] agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

Section 171.105(b)'s interpretation is a matter of statutory construction that we review de novo. *See Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). Our goal in interpreting any statute is to ascertain and give effect to the legislature's intent as expressed by the language of the statute. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013). We presume the legislature chose a statute's language with care, including each word chosen for a purpose while purposely omitting words not chosen. *See In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008). If a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex 2004).

**III**

**A**

The parties agree on a great deal in this case. They agree Hallmark incurred a net loss, not a net gain, on its sale of investments. They further agree on the amount of that net loss—exactly $628,243,514. They even generally agree on the issue that befuddled the court of appeals: how to calculate "net gain." Specifically, they agree that the Austin court of appeals answered that question over 40 years ago in *Calvert v. Electro-Science Inv'rs, Inc.*, 509 S.W.2d 700 (Tex. Civ. App.—Austin 1974, no writ).

The *Electro-Science* court encountered the same dilemma as the court of appeals in this case when interpreting the predecessor statute to current Tax Code section 171.105(b). *See id.* at 701 (interpreting TEX. REV. CIV. STAT. art. 12.02(1)(d)) ("Provided, however, that, as to the sale of investments and capital assets, the term 'total gross receipts of the corporation from its entire business' shall include only the Net gain from such sales."). The taxpayer argued that in calculating net gain, "there are assumed to be a series of sales or transactions whereby either a gain or a loss can occur, so that by evaluating or comparing the results of such sales or transactions, a 'net gain' can be determined." *Id.* The court agreed, concluding that "net gain requires that gains and losses be offset against one another in order that a net figure be obtained." *Id.* at 702.

No one evidently has ever said otherwise. Indeed, soon after *Electro-Science* was issued, the comptroller adopted a conforming approach of offsetting cumulative gains and losses to determine net gain. *See* Tex. Comp. of Pub. Accts., Rule 026.02.12.013(2)(k) (1975) ("Net gains and losses rather than gross sales price from the sales of investments and capital assets shall be added together

5

to determine the total receipts from such transactions."). That understanding is built into the current rule in dispute in this case, which provides that "net gains and losses from sales of investments and capital assets must be added to determine the total gross receipts from such transactions." 34 TEX. ADMIN. CODE § 3.591.

Acknowledging that *Electro-Science* governs how net gain is calculated, the comptroller insists he faithfully enforces that precedent by requiring inclusion of a net loss in the apportionment-factor denominator because *Electro-Science* calls for offsetting losses against gains when calculating net gain. But *Electro-Science* simply does not go as far as the comptroller would like. True, losses are always taken into account when net gain is calculated. But that does not answer the question in this case. At issue here is what happens when those losses overtake the gains and produce a net loss rather than a net gain. *Electro-Science* clarified how to calculate net gain, but it did not speak to the statutory treatment of a net loss.

We, of course, are not bound by *Electro-Science* or the comptroller rules that have followed its lead. But it appears this approach has proved serviceable for more than 40 years, and we are therefore loath to disturb it. But more importantly, we do not need to relitigate the question in order to determine Hallmark did not have a net gain under any calculation. Everyone agrees Hallmark incurred a net loss. Even if arguments can be made that various calculations might result in a different net-gain figure, the parties here agree on the calculation to be used and agree it results in a net loss. If there is any ambiguity to be found in "net gain," it is a red herring in the resolution of *this* case.

**B**

Likely because statutory ambiguity is the quickest path to administrative deference, the comptroller argues the court of appeals correctly found "net gain" ambiguous even as he acknowledges *Electro-Science* answers the question. But the ambiguity the comptroller suggests is not the one found by the court of appeals, which questioned whether "net gain" should be calculated on a per-transaction or cumulative basis. The comptroller instead asks if net gain "always assume[s] a gain even after the cost(s) have been offset or does the term mean gain or loss after the cost(s) have been considered?" In other words, can net gain sometimes mean net loss if losses outstrip gains? This is another issue altogether, and the answer is obvious and easy: No. However net gain is calculated, a statutory net gain cannot simultaneously be a net loss. *See, e.g.*, BLACK'S LAW DICTIONARY 1088 (10th ed. 2014) (defining "net loss" as "[t]he excess of all expenses and losses over all revenues and gains). Accountants might dispute how to properly offset losses against gains and whether the correct calculation should result in a positive or negative figure, but none can dispute that if that end result is a positive number, it's a net gain, and if it's a negative number, it's a net loss.

Again, this case does not concern whether Hallmark's calculation should have resulted in a positive or negative number. *Cf. Bullock v. King Res. Co.*, 555 S.W.2d 789, 791 (Tex. Civ. App.—Waco 1977, no writ) (comptroller unsuccessfully argued taxpayer's accounting, which showed a net loss, should have resulted in a net gain). The parties agree Hallmark incurred a net loss; the comptroller just suggests that "net gain" can be read expansively enough to *include* a net loss. Simply put, the comptroller's reading would rewrite the statute to say Hallmark should include "only

7

the net gain *or net loss*." Not only would this add to the statute's plain language, it would effectively write the word "only" out of the statute. "Only" is defined as "alone in a class or category." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 867 (11th ed. 2012). Here, it plainly serves to limit consideration of any figure that is not a net gain. But if net losses are also fair game, what else is there to exclude?

Moreover, it appears that following *Electro-Science* the comptroller conceded a net loss would not be included under the substantively identical predecessor statute to section 171.105(b). In the same rule the comptroller adopted codifying the *Electro-Science* court's approach to calculating net gain, it further decreed that as to the apportionment-factor denominator, *"[i]f there is a net loss, the corporation must report zero receipts from these transactions." See* Tex. Comp. of Pub. Accts., Rule 026.02.12.013(2)(k) (1975). This interpretation appears to have stood until 2009, though the comptroller acknowledges current section 171.105(b) is "substantively the same statute" as the predecessor considered in *Electro-Science*. *Compare* 34 TEX. ADMIN. CODE § 3.549(e)(3)(A) (2006) ("If the combination of net gains and losses results in a net loss, the corporation must report zero gross receipts from such transactions.") with *id.* § 3.591(e)(2) (2009) ("If the combination of net gains and losses results in a net loss, the taxable entity should net the loss against other receipts, but not below zero."). Considering the history of our franchise-tax scheme and the comptroller's interpretation of it, his position in this case can be fairly considered novel.

## C

Perhaps anticipating that arguing "only the net gain" should include "net loss" might prove unavailing, the comptroller directs us to statutes other than section 171.105(b) to support his

position. One provides: "In apportioning margin, receipts excluded from total revenue by a taxable entity under Section 171.1011 may not be included in . . . the receipts of the taxable entity from its entire business done as determined under Section 171.105." TEX. TAX CODE § 171.1055(a). The comptroller contends that because Hallmark accounted for its $628 million loss as "an amount reportable as income" for its 2008 federal taxes, section 171.1055(a) prohibits Hallmark from not also accounting for the net loss when calculating its apportionment-factor denominator under section 171.105(b). This argument is predicated on Hallmark's reporting of its "amount reportable as income [on] Internal Revenue Service Form 1120" under Tax Code section 171.1011(c)(1)(A)(ii). In the same vein, the comptroller urges that section 171.1121(b) requires a business to "use the same accounting methods to apportion margin as used in computing margin."

Section 171.105(b) addresses a specific issue—what to do with the proceeds from the sale of an investment when calculating the apportionment-factor denominator—and lays out a clear rule: include "only the net gain from the sale." If we perceived a conflict among these provisions we would be forced to conclude the more specific section 171.105(b) controls over the more general provisions relied on by the comptroller. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010) ("[W]e construe statutes by first looking to the statutory language for the Legislature's intent, and only if we cannot discern legislative intent in the language of the statute itself do we resort to canons of construction or other aids such as which statute is more specific."). But we need not go that far because neither provision contradicts section 171.105(b)'s directive to include only a net gain.

9

Because Hallmark included its net loss under section 171.1011, the comptroller argues, it must do the same for section 171.105. But that is not what section 171.1055(a) requires. It provides that receipts "*excluded* from total revenue" under section 171.1011 "may not be *included*" in section 171.105. And Hallmark did just the opposite—it *included* its net loss under section 171.1011 and *excluded* it from section 171.105. In doing so, Hallmark honored the reporting requirement in section 171.1011(c)(1)(A)(ii) and the plain language in section 171.105(b) by excluding its net loss when calculating its apportionment-factor denominator.

Nor is section 171.1121(b) helpful. The comptroller urges that it requires businesses to use "the same accounting methods to apportion margin as used in computing margin," but he fails to cite the immediately preceding qualifier: "[e]xcept as otherwise provided by [chapter 171]." To the extent the failure to include a net loss when calculating the apportionment-factor denominator is a departure from one or more "accounting methods," it is a departure blessed by the Tax Code.

**D**

Having concluded the court of appeals' perceived ambiguity has no bearing on this case and that section 171.105(a) means just what it says—"only the net gain from the sale" of investments should be included in the apportionment-factor denominator—we turn to the comptroller's rule to the contrary. We generally defer to an agency's "reasonable interpretation of a statute, but a precondition to agency deference is ambiguity; 'an agency's opinion cannot change plain language.'" *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006)). The comptroller's rule provides that "[i]f the combination of net gains and losses results in a net loss, the taxable entity should net the loss against

10

other receipts, but not below zero." 34 TEX. ADMIN. CODE § 3.591. It is not entitled to our deference because it directly conflicts with Tax Code section 171.105(b), which provides that "only the net gain from the sale" of investments should be included in the apportionment-factor denominator.

**\* \* \***

We hold that Tax Code section 171.105(b) does not require Hallmark to include a net loss from the sale of investments and capital assets in its apportionment-factor denominator. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Jeffrey V. Brown
Justice

OPINION DELIVERED: April 15, 2016

11