# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REMAND

## NO. 03-18-00573-CV

**Appellants, Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas// Cross-Appellant, Sirius XM Radio, Inc.**

**v.**

**Appellee, Sirius XM Radio, Inc.// Cross-Appellees, Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-000739, THE HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

This appeal arises from a suit filed by Sirius XM Radio, Inc. to recover franchise taxes paid under protest to Glenn Hegar, Comptroller of Public Accounts of the State of Texas. *See* Tex. Tax Code § 112.052. The matter appears before this Court on remand from the Texas Supreme Court. *See Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 413 (Tex. 2022). In light of the supreme court's holding as to the location of Sirius XM's performance of its services, we now consider whether the evidence is legally sufficient to support the trial court's conclusion that Sirius XM properly apportioned its receipts for services performed in Texas for tax years 2010 and 2011. *See* Tex. Tax Code § 171.106(a). For the reasons that follow, we affirm the district court's judgment.

## BACKGROUND

*Franchise Tax*

Texas imposes a franchise tax on each taxable entity that does business in this state or that is chartered or organized in this state. *See id*. § 171.001(a). A taxable entity's franchise-tax obligation is determined by multiplying the "taxable margin" by the applicable tax rate. *See id.* § 171.002 ("Rates; Computation of Tax"). Determining an entity's "taxable margin" is a three-step process. *See id.* § 171.101(a)(1)-(3) ("Determination of Taxable Margin"). First, the taxable entity's "margin" is calculated, which is generally a percentage of total revenue. *See id.* § 171.101(a)(1). Next, the taxable entity's margin is apportioned to its business done in Texas. *See id.* § 171.101(a)(2). Finally, allowable deductions are subtracted from the apportioned margin to yield the entity's "taxable margin." *See id.* § 171.101(a)(3).

Here, the parties' dispute centers on the apportionment step in determining Sirius XM's taxable margin for the tax years 2010 and 2011. Apportionment is accomplished by "multiplying a business's total margin by an apportionment factor." *See Hallmark Mktg. Co. v. Hegar*, 488 S.W.3d 795, 796 (Tex. 2016). In its simplest terms, an apportionment factor represents the percentage or fractional proportion of an entity's gross receipts from its business done in Texas relative to its gross receipts from its business everywhere, including in Texas. *See* Tex. Tax Code § 171.106(a) ("Apportionment of Margin to this State"); *Hallmark Mktg.*, 488 S.W.3d at 796 (explaining that apportionment-factor numerator "consists of receipts from business done in Texas and the denominator consists of receipts from all business"). Under this formula, doing more business in Texas results in higher franchise taxes. *OGCI Training, Inc. v. Hegar*, No. 03-16-00704-CV, 2017 Tex. App. LEXIS 10096, at *3-4 (Tex. App.—Austin Oct. 27, 2017, no pet.) (mem. op.). Therefore, critical to the apportionment step is a

determination of the taxable entity's gross receipts from its business done in Texas, which includes receipts from "each service performed in this state." Tex. Tax Code § 171.103(a)(2) ("Determination of Gross Receipts from Business Done in This State for Margin").

*Sirius XM's Franchise-Tax Dispute*

Sirius XM is a foreign corporation that provides a subscription-based satellite radio service, consisting of more than 150 channels of music, sports, news, talk, entertainment, traffic, and weather channels to subscribers throughout the United States. During the 2010 and 2011 tax years, over 70 percent of Sirius XM's programming consisted of original content produced by Sirius XM specifically for its subscribers and could be obtained only by subscribing to Sirius XM's services. This original content was produced from multiple studios owned and operated by Sirius XM, primarily in New York City and Washington, D.C., and in smaller remote studios. Sirius XM had no permanent studios in Texas but transmitted a small radio show called "Willie's Place" from Hillsboro, Texas, and later from Fort Worth, Texas, for some portion of 2010 and 2011.

In its franchise-tax returns for tax years 2010 and 2011, Sirius XM calculated its margin from the total revenue generated by its subscriptions. *See id.* § 171.101(a)(1). Sirius XM then apportioned its reported subscription receipts for each year based on the locations where it produced and transmitted its programming, a portion of which was in Texas. To calculate the apportionment factor for these receipts, Sirius XM compared the cost of performing these activities inside Texas to the cost of performing these activities everywhere, including Texas. *See id.* § 171.103.

3

The Comptroller subsequently audited Sirius XM's 2010 and 2011 returns and disagreed with the methodology employed by Sirius XM in apportioning its subscription receipts. In the Comptroller's view, Sirius XM performs its services "at the radio receiver," where its signal is unscrambled, and as a result, a subscription receipt for a Sirius XM customer in Texas is a receipt from "a service performed in this state." *See id.* § 171.103(a)(2). Consequently, at the conclusion of the audit, the Comptroller adjusted Sirius XM's apportionment factor to reflect the percentage of Sirius XM subscribers located in Texas. Sirius XM paid, under protest, the additional tax and interest calculated as a result of the audit and then filed suit in district court to obtain a refund. *See id.* § 112.052. Following a bench trial, the district court concluded that the Comptroller's adjustment to Sirius XM's apportionment factor was incorrect, rendered a judgment in favor of Sirius XM, and issued findings of fact and conclusions of law.

*The Comptroller's Appeal*

The Comptroller then appealed the district court's decision to this Court, challenging the district court's conclusions as to where Sirius XM's services were performed and how the apportionment of those services in Texas should be calculated. *See Hegar v. Sirius XM Radio, Inc.*, 604 S.W.3d 125, 126 (Tex. App.—Austin 2020), *rev'd*, 643 S.W.3d 402, 413 (Tex. 2022). We determined that for the purpose of apportionment, (1) "service performed in this state" means that the "receipt-producing, end-product act" occurs in Texas, and (2) the evidence was insufficient to support the district court's fact finding that Sirius XM's "receipt-producing, end-product" was the "production and distribution" of Sirius XM programming. *Id.* at 132-33. In short, we concluded that the contracted-for service, from the standpoint of the subscriber, was

4

the delivery of Sirius XM programming and that under the "receipt-producing, end-product act" standard, this occurred at the point of decryption, at the chip set in the subscriber's radio. *Id.* at 135. Because Sirius XM apportioned its subscriber receipts by comparing the cost of its production and distribution in Texas with the cost of its production and distribution everywhere, we similarly concluded that the trial court's finding as to the apportionment of its services in Texas was not supported by the evidence. *Id.* As a result, we did not consider the issue of whether the comparative cost-of-performance method employed by Sirius XM to calculate its apportionment factor for its services was proper under the Tax Code and the Commissioner's administrative rules.[1]

On petition for review, the Texas Supreme Court rejected the Comptroller's "receipts-producing, end-product act" standard for determining where a service is performed. *See Sirius XM*, 643 S.W.3d at 410. The court held that "service performed in this state," as that phrase is used in Section 171.103(a)(2) of the Tax Code, "requires looking to the physical location of the taxpayer's personnel or equipment that performs the service for which the customer pays." *Id.* Applying that standard, the supreme court rejected the Comptroller's contention that Sirius XM performs its service where its transmission is decrypted. *Id.* at 411. The supreme court concluded, instead, that the relevant service provided by Sirius XM is radio production and broadcasting and that "Sirius has little personnel or equipment in Texas that performs the radio production and transmission services for which its customers pay monthly subscription fees." *Id.* at 412.

---

[1] Sirius XM, by cross-appeal, asserted that the trial court erred in concluding that it was not allowed to include certain expenses (revenue share and hardware subsidies) in its cost-of-goods-sold deduction. *See* Tex. Tax Code § 171.1012 ("Determination of Cost of Goods Sold"). We overruled Sirius's XM cross-appeal on this issue, and on petition for review, Sirius XM did not challenge that portion of our decision.

5

Consequently, the supreme court reversed our judgment and remanded the case so that we could consider the issue that we did not address in our previous opinion. *Id*. at 413. That is, the court remanded for us to examine—in light of its holding on the predicate question of where Sirius XM's services are performed—whether the evidence presented by Sirius XM concerning its comparative cost of performance is sufficient to support the district court's judgment and, specifically, its conclusion that Sirius XM correctly apportioned its receipts for its services performed in Texas in tax years 2010 and 2011. *Id.* at 412; *see* Tex. Tax Code §§ 171.101(a)(2), .106(a).

## DISCUSSION

*Fair Value of Services*

As previously discussed, once a taxable entity determines that it has performed at least some services in Texas during the relevant tax year, it must include its receipts from those services in calculating its apportionment factor. *OCGI Training*, 2017 Tex. App. LEXIS 10096, at *4. In other words, the taxable entity must tabulate the sum of its receipts attributable to its services performed in Texas and include those receipts in tabulating its gross receipts from "business done in Texas." *See* Tex. Tax Code § 171.103(a)(2) (providing that "in apportioning margin, the [taxable entity's] gross receipts . . . from its business done in this state" includes "receipts from . . . each service performed in this state"). The gross receipts from business done in Texas then serves as the numerator in calculating the apportionment factor. *Id.* § 171.106(a) (providing that "numerator . . . is the taxable entity's gross receipts from business done in this state"; "the denominator . . . is the taxable entity's gross receipts from its entire business").

6

Former Rule 3.591(e)(26) of the Comptroller's rules provided that receipts from sales of a service "are apportioned to the location where the service is performed."[2] *See* former 34 Tex. Admin. Code § 3.591(e)(26) (Tex. Comptroller of Pub. Accounts, Margin: Apportionment). Further, as is specifically relevant to this dispute, when services are performed in multiple states, the receipts from these services are apportioned as Texas receipts based on the "fair value of the services that are rendered in Texas." *Id.* Consequently, under the Rule, service receipts from multi-state services are apportioned using the following formula:

Apportionment factor for services =   fair value of services performed in Texas  /

fair value of services performed everywhere

*OGCI Training*, 2017 Tex. App. LEXIS 10096, at *4 (citing former 34 Tex. Admin. Code § 3.591(e)(26)).

In this case, there is no dispute that in tax years 2010 and 2011, Sirius XM performed its broadcasting and transmission services in and outside of Texas and that under Rule 3.591(e)(26), it was required to apportion the receipts for these services as Texas receipts based on the fair value of the services. Instead, the parties' dispute on remand centers on the methodology used by Sirius XM to apportion the fair value of its service performed in Texas.

At trial, Sirius XM presented expert testimony to establish what it contends is the proper  apportionment factor for the fair value of its services in Texas during 2010 and 2011 tax years. Michael Starkey, an expert in quantitative business modeling, testified that in analyzing

---

[2]  Rule 3.591(e)(26) was amended effective January 24, 2021. *See* 46 Tex. Reg. 460 (2021). Unless otherwise noted, all references to Rule 3.591(e)(26) in this opinion are to the former version of the rule, which is the version applicable to this case. *See* 32 Tex. Reg. 10044 (2007), *amended in part by* 34 Tex. Reg. 9472 (2009).

the fair value of Sirius XM's services rendered in Texas, he and his business associates obtained "an enormous amount of data" from Sirius XM and management, including Sirius XM's filings with the Securities and Exchange Commission, to "build a model that helped us evaluate the activities, functions, and other operations of Sirius XM wherever they are performed, and then specifically what was performed in Texas versus everywhere else." The results of this analysis were summarized in an expert report, which was admitted as an exhibit. Starkey testified that he used cost data because it was "systematic and reliable" in representing where Sirius XM performed its activities. Starkey also testified that his analysis "focus[ed] on the unique aspect of [Sirius XM's] business that consumers actively seek out and ultimately, contract to receive." As a result, he did not include expenses for general support functions, such as administration and sales, but he instead included expenses from value-producing activities, such as content production and transmission. The only production and broadcasting services costs associated with Texas during the 2010 and 2011 tax year was a radio program called "Willie's Place," which transmitted from a truck stop for four hours each day and was operated by one employee. According to Starkey, once adjusted to remove expenses associated with satellites, the portion of fair value of Sirius XM services performed in Texas was 0.47% for tax year 2010 and 0.26% in tax year 2011. In its findings of fact and conclusions of law, the district court found "Mr. Starkey's analysis is a credible method for determining fair value" and adopted, as fact findings, his opinions regarding the percentage of the fair value of Sirius XM's services performed in Texas.[3]

---

[3] Relevant to this apportionment calculation, the district court made the following findings and conclusions:

The Comptroller asserts that the evidence presented by Sirius XM to establish fair value is legally insufficient to support that trial court's judgment for two reasons: (1) as a matter of law, a taxable entity cannot rely on cost-of-performance data to apportion the fair value of its services, and (2) in the alternative, Sirius XM failed to "meet its burden of proving the costs that represent the fair value of services performed in Texas." We will consider each of these arguments in turn.

*Standard of Review*

When a party challenges the legal sufficiency of the evidence, we review the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We sustain a legal sufficiency challenge if the record reveals: (1) the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a

[1.]    Sirius XM's headquarters, transmission equipment, and production studios were located almost exclusively outside of Texas.

[2.]    Additionally, Sirius XM produced, recorded, edited, and transmitted its audio entertainment almost exclusively outside of Texas.

[3.]    Sirius XM performed its satellite radio subscription services both inside and outside Texas. Sirius XM's subscription receipts are therefore apportioned to Texas based upon the "fair value" of the service performed in Texas.

[4.]    The fair value of Sirius XM's service performed in Texas was .47% in Report Year 2010 and 0.26% in Report Year 2011. These amounts exclude the value of Sirius XM's satellites in orbit.

[5.]    The apportionment factors reported by Sirius XM "were consistent with the fair value of Sirius XM's service performed in Texas."

vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact.  *Id.* at 810.

To the extent resolution of the Comptroller's challenge turns on construction of former Rule 3.591(e)(26) and its use of the phrase "fair value," we review these issues de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007).  We construe administrative rules, which have the same force and effect as statutes, in the same manner as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999).  Our primary objective in both statutory and rule construction is to ascertain and give effect to the drafter's intent. *AEP Tex. Commercial & Indus. Retail Ltd P'ship v. Public Util. Comm'n*, 436 S.W.3d 890, 906 (Tex. App.—Austin 2014, no pet.).  "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010).  Unless the rule is ambiguous, we follow its clear language. *Rodriguez*, 997 S.W.2d at 254.  Where there is vagueness, ambiguity, or room for policy determination, we defer to the agency's interpretation unless it is unreasonable, plainly erroneous, or inconsistent with the language of the rule.  *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *Gulf Chem. Metallurgical Corp. v. Hegar*, 460 S.W.3d 743, 747 (Tex. App.—Austin 2015, no pet.).

*Analysis*

We first consider the Comptroller's argument that the evidence is legally insufficient to support the trial court's findings as to the fair value of Sirius XM's services performed in Texas because, as a matter of law, cost-of-performance data cannot be used to

10

establish fair value under former Rule 3.591(e)(26), and no other evidence as to the fair value of services was presented by Sirius XM. *See City of Keller*, 168 S.W.3d at 810 (explaining that legal-sufficiency challenge must be sustained "if the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact").

The phrase "fair value" is not defined in the Comptroller's rules and does not appear in any Tax Code provisions describing apportionment or discussing "business done in this state" or "each service performed in this state." *See TGS-NOPEC*, 340 S.W.3d at 439 (noting that undefined terms are typically given their ordinary meaning unless a "different or more precise definition is apparent from the term's use in the context of the statute"); *see also* Tex. Tax Code §§ 171.101, .103, .106. The dictionary definition of "fair," when used as an adjective, includes "being a sufficient, equitable, or adequate basis for judgment or evaluation." *Fair*, Webster's Third New Int'l Dictionary (2002). "Value" is defined as "the monetary worth of something," *Id., Value*. Finally, "fair value" is defined as "a reasonable value (as set by courts and regulatory commissions) for property." *Id.*, *Fair Value.* Based on these dictionary definitions and the plain meaning of the terms, we conclude that the phrase "fair value," as used in former Rule 3.591(e)(26), means the monetary worth of the services at issue, based on an objectively reasonable assessment. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.").

In this appeal, the Comptroller has not offered any alternative interpretation of the term "fair value" in former Rule 3.591(e)(26). Nevertheless, in support of his contention that Sirius XM cannot rely on cost-of-performance data, the Comptroller argues that nothing in the

plain language of Rule 3.591(e)(26) suggests that "fair value" means "cost of performance."[4] According to the Comptroller, when former Rule 3.591(e)(26) was adopted in 2007, the term "cost of performance" was a term of art used in the Uniform Division of Income for Tax Purposes and adopted by other states, and the Comptroller was aware of this use of the term "cost of performance." *See* 32 Tex. Reg. 10044, 10047 (2007) (adopting Rule 3.591). Therefore, the Comptroller reasons, the "use of the term 'fair value' [in the Rule] indicates that something other than 'cost of performance' was intended." *See, e.g.*, *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008) (explaining that courts assume that drafter "included each word for a purpose and that words not included were purposefully omitted"). While we do not disagree that the rule drafters purposefully chose to use the term "fair value" and not the term "cost of performance," to the extent that the Comptroller suggests that this choice indicates that the terms are necessarily exclusive, we cannot agree. Although the terms may have different meanings, nothing in the plain language of the Rule dictates a specific method for calculating fair value or excludes cost of performance as a reasonable means of assessing fair value for purposes of apportionment.

Moreover, in previous guidance, the Comptroller has indicated that cost of performance is an appropriate method for calculating fair value of services, at least in some circumstances. In a 2008 letter ruling, the Comptroller considered how a fixed fee received by a

---

[4] The Comptroller also points out that "when the legislature adopted the margin tax in 2006 without substantially changing the wording of the apportionment sections, it approved the 'fair value' standard [which the Comptroller had first adopted by rule in 1992] by legislative acceptance." *See Reynolds Metals Co. v. Combs*, No. 03-07-00709-CV, 2009 Tex. App. LEXIS 2466, at *12-13 (Tex. App.—Austin, Apr. 8, 2009, pet. denied) (mem. op.) (discussing legislative-acceptance doctrine based on administrative interpretation of statute). Neither party, however, has challenged the validity of Rule 3.291(e)(36) or suggested that its requirement that taxable entities use "fair value" to apportion receipts for services is ambiguous, unreasonable, or contrary to the plain language of the Tax Code.

brokerage-services company for accepting, executing, and clearing trades initiated over the internet should be sourced in its franchise-tax reporting. *See* Tex. Comp. Pub. Accounts, Letter No. 200807139L (July 24, 2008). In deciding this question, the Comptroller cited former Rule 3.591(e)(26) and then noted that because the services involved work done inside and outside of Texas, "Texas receipts should be determined based on the fair value of the services performed in Texas." *Id.* The Comptroller then stated, "The costs attributed to the services in Texas relative to the costs attributed to the out-of-state processing may be the best means of determining the fair value of the services performed in Texas." *Id.* Although the Comptroller did not elaborate on the meaning of the term "fair value" in his letter ruling, we conclude that this interpretation of Rule 3.591(e)(26)—that the relative fair value of services may be determined using cost-of-performance data—is not plainly erroneous or inconsistent with the language of the Rule or the Tax Code.[5] We disagree with the Comptroller's contrary assertion in this appeal that as a matter of law former Rule 3.591(e)(26) prohibits Sirius XM from relying on cost-of-performance data to apportion its receipts for services performed in Texas.

Next, we consider the Comptroller's alternative argument that, even if comparative cost-of-performance evidence may be used to establish fair value of services and to

---

[5] Although not evidence of the Comptroller's intent as to the meaning of the term "fair value" in former Rule 3.591(e)(26), we note that the Comptroller subsequently amended the Rule to state:

> In determining fair value, the relative value of each service provided on a stand-alone basis may be considered. Units of service, such as hours worked, may also be considered. The *costs of performing* a service does not necessarily represent its value. *If costs are considered*, cost should be limited to costs directly related to the service.

46 Tex. Reg. 460 (2021) (emphasis added); *but see Strayhorn v. Willow Creek Res., Inc.*, 161 S.W.3d 716, 722 (Tex. App.—Austin 2005, no pet.) (noting that recent amendments to statute by legislature "offer no insight into the intent to previous legislatures").

apportion service receipts in certain circumstances, the cost-of-performance evidence presented by Sirius XM in this case is legally insufficient to support the district court's judgment. *See City of Keller*, 168 S.W.3d at 807 (explaining a legal-sufficiency challenge must be sustained if "the evidence offered to prove a vital fact is no more than a mere scintilla"). In response to this argument, Sirius XM asserts, as a preliminary matter, that the Comptroller has failed to preserve this challenge for appeal.

To preserve a complaint that expert testimony is legally insufficient because the offered basis is unreliable, an objection must be timely made to the trial court. *See Coastal Transp. Co. v. Crown Centr. Petro. Corp.,* 136 S.W.3d 227, 233 (Tex. 2004). Requiring an objection to the reliability of expert testimony gives the proponent a fair opportunity to cure any deficiencies and prevents trial and appeal by ambush. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816-17 (Tex. 2009). In other words, if the challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, the trial court must be given the opportunity to conduct this analysis first. *Coastal Transp.*, 136 S.W.3d at 233. Therefore, when expert opinion "is admitted in evidence without objection, it may be considered probative evidence even if the basis of the opinion is unreliable." *Pollock*, 284 S.W.3d at 818. Conversely, when opinion testimony is conclusory or speculative, it is not relevant and will not support a judgment even when no objection to its admissibility was made at trial. *Id.* Expert testimony is conclusory "if no basis for the opinion is offered" or if "the basis offered provides no support for the opinion." *See Pike v. Texas EMC Mgmt.*, 610 S.W.3d 763, 787 (Tex. 2020) (quoting *Pollock*, 284 S.W.3d at 818).

Here, the Comptroller asserts that Starkey's opinion testimony as to cost-of-performance lacks probative value because he failed to include certain costs and exclude other

costs in his calculations. Specifically, the Comptroller complains that Starkey failed to include as costs "performance royalties it paid for content it did not produce or own" and "hundreds of millions of dollars it spent to subsidize the installation of the equipment necessary to hear Sirius XM's programming in Texas." In addition, the Comptroller contends that Starkey should not have included costs for research and development because it does not provide a benefit to the customer. In sum, the Comptroller asserts that "[r]easonable minds could not conclude that Sirius XM's cost study represented the fair value of Sirius XM's services in Texas when the cost study excluded significant costs and it assigned no fair value to what was by far the most valuable asset that Sirius XM used to produce its service."

The Comptroller's complaint is, in effect, that the underlying data relied on and the methodology employed by Starkey to tabulate and compare Sirius XM's cost of performance are flawed and that, as a result, his opinion is unreliable and no evidence of fair value. Because the Comptroller did not object to the admission of Starkey's expert testimony at trial, and because his challenge would require an evaluation of the foundational data and underlying methodology that Starkey relied on to draw his opinions, the Comptroller cannot bring this challenge now. *See Pike*, 610 S.W.3d at 787 (concluding that challenge to expert's failure to deduct certain costs when calculating "earnings before interest, taxes, depreciation, and amortization" valuation concerned underlying methodology and technique and could not be raised for first time on appeal). As a result, Starkey's testimony as to comparative cost of performance and his opinion of the fair value of Sirius XM's services performed in Texas relative to its services performed everywhere is considered probative evidence and thus legally sufficient to support the district court's judgment. *See Pollock*, 284 S.W.3d at 818.

In summary, we conclude that Sirius XM is not prohibited from relying on cost-of-performance data to apportion its subscription receipts for services performed in Texas, and that the evidence is legally sufficient to support the trial court's findings as to Sirius XM's apportionment of its services performed in Texas. The Comptroller's sole appellate issue on remand is overruled.[6]

## CONCLUSION

Consistent with the Texas Supreme Court's decision deciding the issue of where services are performed, and for the reasons described above on remand, we affirm the district court's judgment.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed on Remand

Filed: November 10, 2022

---

[6] In the alternative, the Comptroller argues that the case should be remanded "in the interest of justice" because the parties tried the case based on an unsettled legal theory as to where services are performed. *See* Tex. R. App. P. 43.3 (rendition appropriate upon reversing judgment unless remand is necessary). The Comptroller asserts that he "should have the opportunity to present the trial court with evidence concerning fair value based on the new guidance provided by the Supreme Court regarding the nature of Sirius XM's service." Although the parties at trial took contrary positions as to how to apportion Sirius XM's services, nothing prevented the Comptroller from presenting contrary evidence or cross-examining Sirius XM's witnesses on Sirius XM's proposed methodology. We disagree that the circumstances warrant remanding this case.