Glenn HEGAR, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas, Appellants

v.

AUTOHAUS LP, LLP, Appellee

NO. 03–15–00427–CV

Court of Appeals of Texas, Austin.

Filed: February 24, 2017

Jack Hohengarten, Pamela Deitchle, Assistant Attorney General, Austin, TX, for Appellants.

Alex Pilawski, David E. Colmenero, Meadows, Collier, Reed, Cousins, Crouch & Ungerman, L.L.P., Dallas, TX, for Appellee.

Before Justices Puryear, Pemberton, and Goodwin

## OPINION

Melissa Goodwin, Justice

Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas,[1] appeal from the final judgment in favor of Autohaus LP, LLP in this franchise tax protest suit, see Tex. Tax Code § 112.052, and suit for declaratory relief under the Uniform Declaratory Judgments Act (UDJA), see Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. In its judgment, the trial court found that Autohaus was entitled to a refund of the $14,227.09 in franchise tax that it paid under protest; made declarations in favor of Autohaus; and awarded court costs, interest, and attorney's fees to Autohaus. In four issues, the Comptroller challenges the trial court's judgment in favor of Autohaus with respect to its tax protest claims and the trial court's subject matter jurisdiction to consider Autohaus's claims brought under the UDJA, including the award of attorney's fees. For the following reasons, we vacate the trial court's judgment in part and reverse and render in part.

## BACKGROUND

### Section 171.1012 of the Tax Code and Comptroller Rule 3.588

We begin by providing a brief overview of section 171.1012 of the Tax Code and the Comptroller's corresponding rule to give context to the parties' arguments. Section 171.1012, addressing the determination of cost of goods sold for purposes of calculating Texas franchise tax, defines "goods" to mean "real or tangible personal property sold in the ordinary course of business of a taxable entity," and states that "tangible personal property" does not include services. Tex. Tax Code § 171.1012(a)(1), (3)(B)(ii). Cost of goods sold "includes all direct costs of acquiring or producing the goods," id. § 171.1012(c), and "production" includes "construction, installation, manufacture, development, mining, extraction, improvement, creation, raising, or growth," id. § 171.1012(a)(2). The "direct costs of acquiring or producing the goods" include, among other costs, "labor costs," "cost of materials that are an integral part of specific property produced," and "cost of materials that are consumed in the ordinary course of performing production activities." Id. § 171.1012(c)(1)–(3). "A taxable entity may make a subtraction under this section in relation to the cost of goods sold only if that entity owns the good." Id. § 171.1012(i).

Comptroller Rule 3.588 was adopted in response to the enactment of section 171.1012. See 34 Tex. Admin. Code § 3.588(b)(7) (Comptroller of Public Accounts, Margin: Cost of Goods Sold); Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 13–16 (effective Jan. 1, 2008) (current version at Tex. Tax Code § 171.1012); see also Tex. Tax Code § 111.002(a) (authorizing comptroller to adopt rules "for the enforcement of the provisions of this title and the collection of taxes and other revenues under this ti-

---

1. Because their interests in this litigation align, we refer to the Comptroller of Public Accounts of the State of Texas and the Attorney General of the State of Texas collectively as the "Comptroller."

tle").[2] Relevant to this appeal, subsection (b)(7) of Comptroller Rule 3.588 defines "production" to mean "[c]onstruction, manufacture, installation occurring during the manufacturing or construction process, development, mining, extraction, improvement, creation, raising, or growth." 34 Tex. Admin. Code § 3.588(b)(7). And subsection (c)(7) of the rule, addressing "[m]ixed transactions," states: "If a transaction contains elements of both a sale of tangible personal property and a service, a taxable entity may only subtract as cost of goods sold the costs otherwise allowed by this section in relation to the tangible personal property sold." *Id.* § 3.588(c)(7). With this context, we turn to the parties' dispute.

**The Controversy**

Autohaus is an automotive dealership. For tax report year 2009, Autohaus determined its taxable margin for purposes of calculating its Texas franchise tax by subtracting its cost of goods sold from its total revenues. *See* Tex. Tax Code §§ 171.101(a)(1)(B)(ii)(a)(1) (allowing taxable entity to subtract cost of goods sold from total revenues to determine taxable margin for franchise tax calculation), .1012; *see generally Combs v. Newpark Res., Inc.*, 422 S.W.3d 46, 47–48 (Tex. App.— Austin 2013, no pet.) (describing structure and formula for calculating franchise tax, which is "tax on the value and privilege of doing business in Texas" (citing *In re Nestle USA, Inc.*, 387 S.W.3d 610, 612 (Tex. 2012) (orig. proceeding))). At issue here, Autohaus included labor costs that were incurred as part of repair work to install automotive parts on customer-owned vehicles ("repair labor costs") in its cost-of-goods-sold determination. After an audit, the Comptroller disallowed the repair labor costs, resulting in Autohaus owing additional franchise taxes. Asserting that the

repair labor costs were properly included in its cost-of-goods-sold determination, Autohaus paid the additional franchise taxes under protest and brought suit, seeking a refund of the amount of franchise tax that it had paid, declaratory relief, interest, court costs, and attorney's fees. *See* Tex. Tax Code § 112.052; Tex. Civ. Prac. & Rem. Code § 37.009 (authorizing trial court to award attorney's fees "as are equitable and just").

The parties filed competing motions for summary judgment. In its motion, Autohaus argued that it was entitled to include all of its labor costs associated with repair costs involved in the "installation" of automotive parts as cost of goods sold based on the "clear and unambiguous language" of section 171.1012 of the Tax Code, *see* Tex. Tax Code § 171.1012, and the invalidity and unconstitutionality of Comptroller Rule 3.588(b)(7), *see* 34 Tex. Admin. Code § 3.588(b)(7). Autohaus argued that Comptroller Rule 3.588(b)(7) was invalid as it applied to the statutory term "production" because it attempted to alter the unambiguous statute by imposing additional restrictions. Autohaus also argued that the Comptroller's assessment of the protested amount of franchise tax violated the Equal and Uniform Taxation Clause and the Equal Protection Clause of the Texas Constitution, *see* Tex. Const. art. I, § 3; art. VIII, § 1(a); that the assessment violated the Equal Protection Clause and the Due Process Clause of the U.S. Constitution, *see* U.S. Const. Amend. XIV, § 1; and that it was entitled to declaratory relief, attorney's fees, and interest. Autohaus supported its motion with evidence, including an affidavit from its controller, a copy of its letter conveying payment under protest, and the Comptroller's notification of the audit results.

---

**2.** Rule 3.588 was adopted to be effective on January 1, 2008, the same date that section 171.1012 became effective. *See* 32 Tex. Reg. 10034, 10034–38 (2007).

In the Comptroller's motion for summary judgment, he argued that the relevant language in section 171.1012 was ambiguous because it did not detail how "mixed transactions"—those involving services and goods—were to be handled or include a definition of "installation" and that Comptroller Rule 3.588, particularly subsections (b)(7) and (c)(7), clarified the ambiguity to allow a business to include in its cost-of-goods-sold determination "production costs for installation labor [only] when materials are installed into a product that the business owns and is producing for sale in the ordinary course of business." *See* 34 Tex. Admin. Code § 3.588(b)(7), (c)(7) (addressing "mixed transactions"). The Comptroller supported his motion with evidence, including an affidavit from the auditor who conducted the audit on Autohaus and explained the results from the audit with documentation and copies of the audit report; Autohaus's franchise tax report; and Autohaus's protest letter. The parties also filed responses to the competing motions, and the Comptroller filed a plea to the jurisdiction, challenging the trial court's jurisdiction over Autohaus's UDJA claims on the ground that Autohaus's declarations were redundant of issues in the tax protest suit.

Following a hearing, the trial court denied the Comptroller's motion for summary judgment and plea to the jurisdiction and granted Autohaus's motion for summary judgment, ordering that Comptroller rule 3.588(b)(7) "as it applies to the term 'production' is unconstitutional and invalid" and that Autohaus was entitled to include all of the repair labor costs in its cost-of-goods-sold determination, a refund of $14,227.09 in franchise tax that it paid under protest, interest accruing on that amount, and attorney's fees. After granting summary judgment in favor of Autohaus, the trial court held a trial on the issue of attorney's fees. In its final judgment, the trial court awarded Autohaus attorney's fees, costs, and interest and included declarations that track those that the trial court made in its summary judgment ruling. The Comptroller filed a motion for new trial, which the trial court denied. This appeal followed.

## ANALYSIS

### Were Autohaus's repair labor costs properly included as cost of goods sold?

In his first and second issues, the Comptroller challenges the trial court's rulings in favor of Autohaus as to its claims brought under chapter 112 of the Tax Code. *See* Tex. Tax Code § 112.052 (authoring taxpayer to bring suit to recover tax paid under protest). As previously stated, the trial court concluded that Autohaus was entitled to include the repair labor costs (the labor costs associated with repair work to install automotive parts on customer-owned vehicles) as cost of goods sold and, therefore, that Autohaus was entitled to a refund of the amount of franchise tax that it paid under protest. As part of its ruling, the trial court found that Comptroller Rule 3.588(b)(7) was unconstitutional and invalid.

In his first issue, the Comptroller challenges the trial court's conclusion that Autohaus was entitled to subtract the repair labor costs as cost of goods sold, arguing that those costs were not the "production" of automotive parts installed on customer vehicles under section 171.1012 of the Tax Code.[3] *See id.* § 171.1012. In his second

---

3. The Comptroller does not dispute and did not disallow material costs of automotive parts that were purchased by Autohaus and then resold and installed in customer-owned vehicles from Autohaus's cost-of-goods-sold determination. The Comptroller's summary

issue, the Comptroller argues that Comptroller Rule 3.588(b)(7) is valid and constitutional.

**Standard of Review**

The Comptroller's first two issues challenge trial court rulings that were made in the context of competing motions for summary judgment, which we review de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).

 The Comptroller's issues also address statutory and rule construction, questions of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008); *see Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (construing administrative rules in same manner as statutes because they have same force and effect). Our primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We also "'read the statute as a whole and interpret it to give effect to every part.'" *Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). Further, a precondition to deference to an agency's interpretation of a statute is ambiguity. *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404–05 (Tex. 2016); *see Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (describing agency-deference doctrine); *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629–30 (Tex. 2013) (same). And "[t]axing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *See Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012). With the foregoing in mind, we turn to the relevant language of the Tax Code.

**Section 171.1012 of the Tax Code**

 As a threshold matter, the parties join issue on whether the relevant language of section 171.1012 is ambiguous. The Comptroller argues that the section's language is ambiguous with regard to transactions involving both services and sales of goods and as to the use of the word "installation" in the context of "production" in section 171.1012, and that, therefore, Comptroller Rule 3.588, in particular subsections (b)(7) and (c)(7), is enti-

---

judgment evidence included an affidavit from the auditor who averred that Autohaus was allowed "to include in its cost-of-goods-sold deduction all of the costs of acquiring and reselling the automobile parts and other tangible personal property that it and its subcontractors had used during the tax periods, including those used in the performance of its repair and installation services, where Autohaus provided supporting documentation."

tled to deference. As previously stated, subsection (b)(7) defines "production" to mean "[c]onstruction, manufacture, installation occurring during the manufacturing or construction process, development, mining, extraction, improvement, creation, raising, or growth." 34 Tex. Admin. Code § 3.588(b)(7). And subsection (c)(7) of the rule, addressing "[m]ixed transactions," states: "If a transaction contains elements of both a sale of tangible personal property and a service, a taxable entity may only subtract as cost of goods sold the costs otherwise allowed by this section in relation to the tangible personal property sold." *Id.* § 3.588(c)(7). According to the Comptroller, these subsections clarify the statutory ambiguity as to the term "installation," as used in the context of "production" in section 171.1012, to allow only the cost of acquiring the actual product (here, the automotive part) that is sold to the customer to be subtracted as cost of goods sold. *See* Tex. Tax Code § 171.1012(a)(2), (c). Under the Comptroller's interpretation of the statute as clarified by the rule, Autohaus's installation of parts into customer-owned vehicles during repair work is a mixed transaction involving a sale of good (automotive parts) and the provision of services (repairs).

Autohaus counters that the relevant statutory language in section 171.1012 is not ambiguous and that the plain meaning of the word "installation" supports its positions that the repair labor costs attributable to installation of automotive parts in customer-owned vehicles are properly subtracted as cost of goods sold and that Comptroller Rule 3.588(b)(7) is invalid because it adds extra-statutory limitations. *See Roark Amusement*, 422 S.W.3d at 637 (declining to engraft "extra-statutory requirement"). Autohaus argues that Comptroller Rule 3.588(b)(7) does not seek to define the term "installation" but to limit the types of installation that qualify as cost

of goods sold—those "occurring during the manufacturing or construction process"—and, because production already includes "manufacture" and "construction," that the rule "reads the term 'installation' out of Section 171.1012(a)(2)."

■ The crux of the parties' dispute is whether the repair labor costs are costs of "producing the goods" (the automotive parts), *see* Tex. Tax Code § 171.1012(c), and whether the statute is ambiguous. "Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation." *Southwest Royalties*, 500 S.W.3d at 405 (citing *Roark Amusement*, 422 S.W.3d at 635; *Texas Citizens for a Safe Future*, 336 S.W.3d at 628 ("It is precisely when a statutory term is *subject to multiple understandings* that we should defer to an agency's reasonable interpretation." (emphasis added))). "Because, in context, the statutory language is not subject to multiple understandings," we agree with Autohaus that it is not ambiguous. *Id.* at 406. We disagree, however, with Autohaus that the plain language of the statute supports its position that its repair labor costs were properly included as cost of goods sold.

■ The term "production" in section 171.1012 "includes" the undefined term "installation." *See* Tex. Tax Code § 171.1012(a)(2). When a statute contains an undefined term, "the term is typically given its ordinary meaning." *Southwest Royalties*, 500 S.W.3d at 405 (citing *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013)); *see Webster's Third New Int'l Dictionary* 1171 (2002) (defining "install" to mean "to set up for use or service"). "But the meaning must be in harmony and consistent with other statutory terms and '[i]f a different, more limited, or precise definition is apparent from the

term's use in the context of the statute, we apply that meaning.'" *Southwest Royalties*, 500 S.W.3d at 405. "If an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the statutory scheme." *Id.* (citing *Thompson v. Texas Dep't of Licensing & Regulation*, 455 S.W.3d 569, 571 (Tex. 2014)).

In the context of the statutory scheme, "installation" is listed with other "production" activities, such as "construction" and "manufacture." *See* Tex. Tax Code § 171.1012(a)(2). These listed activities address the direct costs of "producing the goods"—i.e., making or completing goods—as compared with the cost of "acquiring" goods for resale. *See id.* § 171.1012(c); *see also TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441–42 (Tex. 2011) (noting that "fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used" and interpreting "similar terms" in "similar manner" based on "canon of statutory construction known as *noscitur a sociis*, or 'it is known by its associates'"); *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) (applying "rule of *ejusdem generis*, which provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation").

The distinction in the statute between costs associated with "acquiring" goods and those associated with "producing goods" is highlighted by the requirement that the taxable entity must own the "good" to include its costs under this section, *see* Tex. Tax Code § 171.1012(i), and

the specific references to "production," "produced," and "acquiring or producing" in the enumerated categories of direct costs. *Id.* § 171.1012(c)(2) (allowing "costs of materials that are an integral part of specific property produced"), (3) (allowing "costs of materials that are consumed in the ordinary course of performing production activities"), (6)–(9) (referring to certain depreciation, renting, repairing, researching, and designing costs directly related to "production of the goods"), (11) (allowing as costs "taxes paid in relation to acquiring or producing any material"), (12) (allowing "the cost of producing or acquiring electricity sold").

■ Relevant to this inquiry, the goods that Autohaus sold in the ordinary course of its business were the automotive parts, *see id.* § 171.1012(a)(1), and its allowed cost of goods sold included its direct costs of "acquiring"—i.e., purchasing—the parts for resale to its customers. *Cf. id.* § 171.1012(c) (stating that "cost of goods sold includes all direct costs of acquiring ... the goods"). But we cannot agree with Autohaus's interpretation of the statute that it also "produced" the automotive parts by subsequently installing them on customer-owned vehicles while performing repair work. This work did not involve installing anything into or onto the automotive part to "produce" the part—the automotive part had already been "produced" prior to Autohaus's "acquiring" it for resale. In other words, Autohaus did not, in any way, modify, make, or complete the automotive part to "produce" it. Rather, reading the statutory provisions together makes clear that the repair labor costs were not costs of "producing" the already-completed automotive parts but were costs of "services," costs expressly excluded from cost of goods sold. *See id.* § 171.1012(a)(3)(B)(ii); *see also Newpark Res.*, 422 S.W.3d at 54 (observing that

term "services" was not defined in section 171.1012 and citing dictionary definition that "services" means " 'useful labor that does not produce a tangible commodity' ").[4] Thus, applying the only reasonable interpretation of "installation" in the context of the statutory scheme, we conclude that Autohaus was not entitled to include its repair labor costs as cost of goods sold.[5] *See Southwest Royalties*, 500 S.W.3d at 406; *Hilco Elec. Coop.*, 111 S.W.3d at 81.

Having concluded that Autohaus was not entitled to include its repair labor costs in its cost of goods sold based on the plain language of the Tax Code, we conclude that the trial court erred by awarding Autohaus a refund of the amount of franchise tax that it paid under protest and sustain the Comptroller's first issue. Given this conclusion based on the plain language of the statute, we need not reach the trial court's ruling as to the validity and constitutionality of Comptroller Rule 3.588(b)(7) to the extent Autohaus challenged the rule in its tax protest suit. *See* Tex. R. App. P. 47.1, 47.4; *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (holding that "courts of appeals should consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are

---

**4.** We find misplaced Autohaus's reliance on *Combs v. Newpark Resources, Inc.*, 422 S.W.3d 46 (Tex. App.—Austin 2013, no pet.), and *Hegar v. CGG Veritas Servs. (U.S.), Inc.*, No. 03-14-00713-CV, 2016 WL 1039054, 2016 Tex. App. LEXIS 2439 (Tex. App.—Austin Mar. 9, 2016, no pet.) (mem. op.), to support its position that its repair labor costs were cost of goods sold, and not services. In *Newpark Resources*, we addressed whether the taxpayer "furnish[ed] labor or materials to a project for the construction . . . of real property such that it can include the cost of that labor or material in its cost of goods sold" under subsection (i) of section 171.1012. *See* 422 S.W.3d at 51; see *also* Tex. Tax Code § 171.1012(i) ("A taxable entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property is considered to be an owner of that labor or materials and may include the costs, as allowed by this section, in the computation of cost of goods sold."). Similarly, in *CGG Veritas*, we addressed whether labor and material costs were associated with "a project for the construction . . . of real property" under subsection (i) of section 171.1012. *See* 2016 WL 1039054, at *2–4, 2016 Tex. App. LEXIS 2439, at *6–12. Our analysis in those cases as to language of subsection (i) is not inconsistent with our analysis here.

**5.** Even were we to conclude that the relevant language of section 171.1012 is ambiguous, we could not conclude that the Comptroller's interpretation as stated in Comptroller Rule

3.588 is plainly erroneous or inconsistent with the statutory text. *See* 34 Tex. Admin. Code § 3.588; *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) ("If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, as there is here, we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule."); *see also Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 406 (Tex. 2016) ("Although the Comptroller's definition is not binding, we may consider it in determining the definition most consistent with the scheme of the statute, just as we may look to other aids for construing statutory language."). Consistent with the plain language of the statute, the rule allows labor costs associated with installation "occurring during the manufacturing or construction process"—i.e., "production" activities—to be included as cost of goods sold but disallows labor costs associated with providing services, which are expressly excluded from the statutory definition of "goods." *See* Tex. Tax Code § 171.1012(a)(1); 34 Tex. Admin. Code § 3.588(b)(7), (c)(7). When Autohaus was able to show that it was the owner of the vehicle being repaired, the Comptroller allowed the costs to install automotive parts on the vehicle to be included as cost of goods sold because those costs were "direct costs" of "producing" the good sold—the vehicle—as compared with the automotive part. *See* Tex. Tax Code § 171.1012(c) (including "all direct costs of acquiring or producing the goods").

necessary for final disposition of the appeal when reviewing a summary judgment"); *see also Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123–24 (Tex. App.—Austin 2007, no pet.) (concluding rule challenge would amount to "mere abstract, advisory opinion" because relief provided would not extend to invalidating already-issued order or contract award to which rule challenge had pertained).[6]

## Did the trial court have jurisdiction over Autohaus's UDJA claim?

In his fourth issue, the Comptroller argues that the trial court did not have jurisdiction over Autohaus's UDJA claim that challenges Comptroller Rule 3.588(b)(7) and requests attorney's fees and costs because this claim does not fall within the scope of the UDJA and was, apart from the requests for attorney's fees and court costs, redundant of its chapter 112 claim. Autohaus counters that: (i) it properly brought its UDJA claim because this claim concerns the construction of section 171.1012 of the Tax Code, and (ii) its UDJA claim is not redundant because it has effect on a "going forward basis."

## Standard of Review

■ Absent an express waiver of its sovereign immunity, the State is generally immune from suit, depriving the courts of subject matter jurisdiction over suits against the state or its subdivisions. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006). Subject-matter jurisdiction is a question of law that appellate courts review de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *see Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224, 226–27 (Tex. 2004) (describing doctrine of sovereign immunity and analy-sis to determine if subject matter jurisdiction exists).

■ "The UDJA does not create or augment a trial court's subject-matter jurisdiction—it merely provides a remedy where subject-matter jurisdiction already exists." *Texas Logos, L.P.*, 241 S.W.3d at 114; *see Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (noting that Texas Supreme Court has consistently stated that "UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction' "); *see also Strayhorn v. Raytheon E–Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied) ("To establish jurisdiction under the UDJA, a party must plead the existence of an 'underlying controversy' within the scope of section 37.004 of the civil practice and remedies code."). The Texas Supreme Court also has made clear that the UDJA cannot be used "as a vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009); *see Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 301 (Tex. 2011) (explaining that "an award of attorney's fees under the [UDJA] is unavailable if the claim for declaratory relief is merely incidental to other claims for relief"); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370–71 (Tex. 2009) (noting that UDJA is not general waiver of sovereign immunity and that "litigant's request for declaratory relief does not alter a suit's underlying nature").

## Autohaus's UDJA claim

■ Turning to Autohaus's UDJA claim, the underlying nature of its claim is

---

6. Because we have concluded that Autohaus was not entitled to a judgment in the amount of the franchise tax that it paid under protest, we also do not reach the Comptroller's third issue in which he argues that, even if Auto-haus may deduct the repair labor costs, material fact issues precluded summary judgment as to the specific amount of the refund awarded to Autohaus based on its chapter 112 claim. *See* Tex. R. App. P. 47.1, 47.4.

a challenge to the validity and constitutionality of Comptroller Rule 3.588(b)(7), not a challenge to a statute or an ultra vires claim that would confer jurisdiction on the trial court under the UDJA. *See* Tex. Civ. Prac. & Rem. Code § 37.004 (addressing subject matter of relief); *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 708 (Tex. App.—Austin 2013, no pet.) (observing that claim concerning proper construction of rule, as opposed to statute, "falls outside the UDJA altogether"); *see also Houston Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 161–64 (Tex. 2016) (describing and clarifying ultra vires doctrine); *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015) (concluding that ultra vires exception to immunity did not apply because challenge was to "the validity of the cosmetology statutes and regulations, rather than complaining that officials illegally acted or failed to act"); *Sefzik*, 355 S.W.3d at 618 (recognizing that "state may be a proper party to a declaratory judgment action that challenges the validity of a statute"); *Heinrich*, 284 S.W.3d at 372 (describing ultra vires doctrine); *Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing–Heating–Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.) ("When a plaintiff files a proceeding that only challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant."). The Texas Supreme Court has not recognized a waiver of sovereign immunity under the UDJA to construe a statute in the context of determining the validity of an administrative rule. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–34 (Tex. 2010) (comparing ultra vires claims and claims challenging validity of statute); *see also Heinrich*, 284 S.W.3d at 373 n.6 (citing section 37.006(b) of UDJA and noting that when validity of statute challenged, UDJA waives immunity to extent it requires governmental entities to be made parties). Further, "[u]nless and until the legislature or the Texas Supreme Court declares that the UDJA expressly waives sovereign immunity for 'bare statutory construction' claims, we will not infer a 'broader right to sue government to obtain 'statutory construction.'" *McLane Co. v. Texas Alcoholic Beverage Comm'n*, No. 03-16-00415-CV, 514 S.W.3d 871, 876, 2017 WL 474067, at *3, 2017 Tex. App. LEXIS 851, at *7–8 (Tex. App.—Austin Feb. 1, 2017, no pet. h.) (quoting and citing *Ex parte Springsteen*, 506 S.W.3d 789, 799 (Tex. App.—Austin 2016, pet. filed)). And, because there is no waiver of immunity under the UDJA, any going-forward effect is immaterial.

■ Further, to the extent that Autohaus's UDJA claim attacks the tax liability that it paid under protest, "a declaratory judgment action will not lie to provide redundant remedies." *See Raytheon E–Sys.*, 101 S.W.3d at 572 ("When a statute provides an avenue for attacking an agency order, a declaratory judgment action will not lie to provide redundant remedies."); *see also In re Nestle USA, Inc.*, 359 S.W.3d 207, 210–11 (Tex. 2012) (noting that chapter 112 provides exclusive waiver of sovereign immunity in taxpayer litigation); *Sanadco Inc. v. Office of Comptroller of Pub. Accts.*, No. 03-11-00462-CV, 2015 WL 1478200, at *4 (Tex. App.—Austin, Mar. 25, 2015, pet. denied) (mem. op.) (noting that Texas Supreme Court has held that chapter 112 "provides exclusive remedies for relief from assessed taxes on *any* basis"); *Kuntz v. Khan*, No. 03-10-00160-CV, 2011 WL 182882, at *4–5 (Tex. App.—Austin Jan. 21, 2011, no pet.) (mem. op.) (explaining redundant remedies doctrine and concluding that, "[b]ecause the

relief [the plaintiff] seeks under the UDJA would be considered 'redundant' of her APA judicial-review claim, she has failed to invoke the district court's subject-matter jurisdiction to grant such relief").

For these reasons, we conclude that the trial court did not have jurisdiction to consider Autohaus's UDJA claim, including its claim for attorney's fees, and sustain the Comptroller's fourth issue.[7]

## CONCLUSION

For these reasons, we vacate the trial court's judgment for lack of subject matter jurisdiction to the extent it granted relief under the UDJA, including the award of attorney's fees, reverse the remainder of the trial court's final judgment, and render a take-nothing judgment in favor of the Comptroller on Autohaus's chapter 112 claim.

---

**7.** Further, even if we were to construe Autohaus's pleadings as asserting a rule challenge under section 2001.038 of the APA, our analysis and conclusion as to its chapter 112 claim would foreclose any relief under the APA. *See* Tex. Gov't Code § 2001.038(a) ("The validity or applicability of a rule ... may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."); *Texas Logos, L.P. v. Texas Dep't of Transportation,* 241 S.W.3d 105, 122–24 (Tex. App.—Austin

2007, no pet.) (noting that relief under section 2001.038 does not extend to invalidating agency decisions and that challenge to validity of rules would amount to "mere abstract, advisory opinion" when complainant alleged only *"past* statutory violations"); *see also Machete's Chop Shop, Inc. v. Texas Film Comm'n,* 483 S.W.3d 272, 286 (Tex. App.—Austin 2016, no pet.) ("Like other causes of action, a suit for a declaratory judgment under section 2001.038 requires the existence of a justiciable controversy to establish the trial court's subject matter jurisdiction.").