# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00669-CV

### NuStar Energy, L.P, Appellant

### v.

### Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas, Appellees

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-000793, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

---

## O P I N I O N

This permissive appeal involves the construction of Section 171.103(a) of the Tax Code, which governs the apportionment of gross receipts for calculating a business's franchise tax obligation. *See* Tex. Tax Code § 171.103 ("Determination of Gross Receipts from Business Done in This State for Margin"). Appellant NuStar Energy, L.P., filed a taxpayer refund suit against appellees Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas (collectively, the "Comptroller"), seeking to recover certain franchise tax payments made under protest. The parties filed competing motions for partial summary judgment addressing the narrow issue of whether the Comptroller had adopted a facially invalid rule that was contrary to Section 171.103(a). *See* 34 Tex. Admin. Code § 3.591(e)(29)(A), (C), (H), (31) (Comptroller of Public Accounts, Margin: Apportionment) (amended 2021) (current version at 34 Tex. Admin Code § 3.591(e)(29)(A), (C), (H), (e)(32)) (the "Comptroller Rule"). The district court granted the Comptroller's motion and

denied NuStar's motion, concluding that the Comptroller Rule was facially valid. For the following reasons, we affirm the trial court's summary judgment order.

## BACKGROUND

Texas levies a franchise tax on all businesses chartered, organized, or conducting business within Texas. *See* Tex. Tax Code § 171.001(a). The franchise tax is levied on those businesses "for the privilege of doing business in this State," with the goal that the amount of tax levied "should approximate the value of this privilege." *General Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 863 (Tex. App.—Austin 1996, writ denied). Because a business may operate across multiple states, countries, or jurisdictions, Texas applies the franchise tax on the business's "taxable margin," multiplied by the applicable tax rate. *See* Tex. Tax Code § 171.002 ("Rates; Computation of Tax"); *see also Hegar v. Sirius XM Radio, Inc.*, 660 S.W.3d 277, 280 (Tex. App.—Austin 2022, no pet.). The business's "taxable margin" is calculated using a three-step process: (1) the business's margin is calculated based on a statutorily directed percentage of its total revenue; (2) the margin is then apportioned to its business done in Texas; and (3) allowable deductions are subtracted from the apportioned margin to derive the business's "taxable margin." *See* Tex. Tax Code §§ 171.101 ("Determination of Taxable Margin"), 171.106 ("Apportionment of Margin to this State"); *see also Sirius XM*, 660 S.W.3d at 280.

The parties' dispute centers on the second step, apportioning of NuStar's taxable margin for the tax years 2011 through 2013.[1] Apportionment is accomplished by "multiplying a

---

[1] As alleged in NuStar's petition, NuStar challenges the apportionment of its gross receipts from the sale of certain types of fuel transported to oceangoing foreign vessels. NuStar alleges that although the vessels received the fuel at a Texas port, the fuel could not be used, sold, or otherwise disposed of within Texas. That is, the vessels received the NuStar bunker

business's total margin by an apportionment factor." *See Hallmark Mktg. Co. v. Hegar*, 488 S.W.3d 795, 796 (Tex. 2016). That is, the business's total margin is multiplied by the percentage of the business's gross receipts from its business done only in Texas divided by its total gross receipts from its business everywhere (including Texas). *See* Tex. Tax Code § 171.106(a); *Hallmark Marketing*, 488 S.W.3d at 796 (explaining that numerator of apportionment factor "consists of receipts from business done in Texas and the denominator consists of receipts from all business"). The more business done in Texas, the higher the apportionment factor, and the higher the Texas franchise taxes. *See Sirius XM*, 660 S.W.3d at 280. Thus, determining a business's gross receipts from its business done in Texas is critical to apportioning the business's taxable margin.

Section 171.103 of the Texas Tax Code governs which of a business's gross receipts should be apportioned as business done in Texas. *See* Tex. Tax Code § 171.106(a) (calculating "the taxable entity's gross receipts from business done in this state, as determined under Section 171.103"); *see also id.* § 171.103 ("Determination of Gross Receipts from Business Done in This State for Margin"). Relevant here, Section 171.103(a)(1) provides that the following gross receipts are counted as business done within Texas:

> (a) Subject to Section 171.1055, in apportioning margin, the gross receipts of a taxable entity from its business done in this state is the sum of the taxable entity's receipts from:
>
>> (1) each sale of tangible personal property ***if the property is delivered or shipped to a buyer in this state*** regardless of the FOB point or another condition of the sale;

---

fuels at a Texas port, and the fuel was then transported outside of Texas waters before it was used for oceangoing travel.

*Id.* § 171.103(a)(1) (emphasis added). The Comptroller has adopted rules governing the computation and sourcing of a business's gross receipts in a variety of commercial contexts. *See* 34 Tex. Admin. Code § 3.591 (Comptroller of Public Accounts, Margin: Apportionment). NuStar challenges several provisions of Rule 3.591 that apply to the sales of tangible personal property at issue in the underlying dispute:

> (29) Tangible personal property. Examples of transactions that involve the sale of tangible personal property and result in Texas receipts include, but are not limited to, the following:

>> (A) the sale of tangible personal property that is delivered in Texas to a purchaser. Delivery is complete upon transfer of possession or control of the property to the purchaser, an employee of the purchaser, or transportation vehicles that the purchaser leases or owns. FOB point, location of title passage, and other conditions of the sale are not relevant to the determination of Texas gross receipts;

>> . . .

>> (C) the sale and delivery in Texas of tangible personal property that is loaded into a barge, truck, airplane, vessel, tanker, or any other means of conveyance that the purchaser of the property leases and controls or owns. The sale of tangible personal property that is delivered in Texas to an independent contract carrier, common carrier, or freight forwarder that a purchaser of the property hires results only in gross receipts everywhere if the carrier transports or forwards the property to the purchaser outside this state;

>> . . .

>> (H) the drop shipment of tangible personal property in Texas. A drop shipment is a shipment of tangible personal property from a seller directly to a purchaser's customer, at the request of the purchaser, without passing through the hands of the purchaser. This results in Texas gross receipts for the seller and the purchaser.

. . .

(31) Texas waters. Revenues from transactions that occur in Texas waters are Texas receipts. Texas waters are considered to extend to 10.359 statute miles, or nine nautical miles, from the Texas coastline.

34 Tex. Admin. Code § 3.591(e)(29)(A), (C), (H), (31).[2]

After paying the disputed franchise taxes relating to those sales, NuStar filed the present tax refund suit against the Comptroller, seeking among other things a declaratory judgment that the disputed subsections of the Comptroller Rule are facially invalid under the Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.038(a) (providing for declaratory judgment to challenge rule validity). The parties filed cross motions for partial summary judgment on the narrow issue of the rule's facial validity. On November 5, 2021, the trial court entered a partial summary judgment order, granting the Comptroller's cross motion for partial summary judgment, denying NuStar's motion, and concluding that the Comptroller Rule is facially valid.

NuStar filed an unopposed motion to amend the partial summary judgment order, and the district court thereafter amended its order to grant permission for a permissive interlocutory appeal to address whether the Comptroller's Rule is a valid construction of Section 171.103(a)(1) of the Texas Tax Code. This Court then granted NuStar's petition for permissive appeal. *See NuStar Energy, L.P. v. Hegar*, No. 03-21-00669-CV, 2022 WL 1158634, at *1 (Tex. App.—Austin Apr. 20, 2022, order); *see also* Tex. Civ. Prac. & Rem. Code § 51.014(d), (f); Tex.

---

[2] Rule 3.591 has been amended twice since the underlying litigation began, but neither of those amendments made any substantive changes to the portions of the Comptroller Rule at issue in this appeal.

R. App. P. 28.3; *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 146–47 (Tex. 2022) (explaining that "permissive appeals are resolved according to the same principles as any other appeal").

## STANDARD OF REVIEW

When both parties move for partial summary judgment on the same issue and the trial court grants one motion and denies the other, we conduct a de novo review, considering the evidence presented, determining all questions presented, and if we determine that the trial court erred, rendering the ruling the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

The sole issue on appeal is a rule validity challenge, which tests an agency rule adopted under the APA "on procedural and constitutional grounds." *CenterPoint Energy Houst. Elec., LLC v. Public Util. Comm'n*, 354 S.W.3d 899, 902 (Tex. App.—Austin 2011, no pet.). We presume the rule is valid and constitutional, and therefore the challenging party bears the burden of overcoming that presumption. *Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). When, as here, the challenging party contends that the rule is facially invalid, we determine "whether the rule is contrary to the relevant statute." *DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 420 (Tex. App.—Austin 2006, pet. denied). That is, the challenging party must show that the rule either (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied); *see also Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 33.

6

Whether the challenged subsections of the Comptroller Rule are facially invalid turns on the construction of that rule and Section 171.103(a)(1), matters of law that we review de novo. *Bridges v. Texas State Bd. of Veterinary Med. Exam'rs*, No. 03-18-00010-CV, 2019 WL 639151, at *2 (Tex. App.—Austin Feb. 15, 2019, no pet.) (mem. op.) (citing *Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007) and *Rodriguez v. Service Lloyds Ins.*, 997 S.W.2d 248, 254 (Tex. 1999)). "Our primary concern in construing a statute is the express statutory language." *Hegar v. Autohaus LP*, 514 S.W.3d 897, 902 (Tex. App.—Austin 2017, pet. denied). We therefore read the statute as a whole, interpret it to give effect to every part, and construe the text according to its plain and common meaning "unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Id.* (quoting *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010)). If the statute is unambiguous, we adopt the construction supported by its plain language. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (describing statutory construction); Similarly, we "construe administrative rules, which have the same force as statutes, in the same manner as statutes." *Rodriguez*, 997 S.W.2d at 254. That is, agency deference "has no place" if the statute is unambiguous. *Texas Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 665 S.W.3d 135, 144 (Tex. App.—Austin 2023, pet. filed) (quoting *TracFone Wireless, Inc. v. Commission on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013)). If the statute is ambiguous, we generally then defer to the agency's construction, giving "serious consideration" to the agency's construction of the statute and upholding that construction if it is reasonable. *CenterPoint Energy*, 354 S.W.3d at 903 (quoting *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex.2011)). But when interpreting an ambiguous tax statute, however, we apply a presumption

7

in favor of a taxpayer. *See Hegar v. Health Care Serv. Corp.*, 652 S.W.3d 39, 43 (Tex. 2022); *see also Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012) ("Taxing statutes are construed strictly against the taxing authority and liberally for the taxpayer.").

**DISCUSSION**

NuStar's sole issue on appeal contends that the subsections of the Comptroller's Rule are facially invalid because they are contrary to Section 171.103(a) of the Tax Code. NuStar contends that Section 171.103(a) applies the franchise tax on the sale of personal property only where the buyer is located in Texas (sometimes called a "place of market," "location of buyer," or "ultimate destination" approach), but the challenged portions of the Comptroller Rule apply the franchise tax on transactions where the seller ships or delivers the property to the buyer in Texas, regardless of whether the buyer is located in state or out of state (sometimes called a "place of transfer" or "location of delivery" approach).[3] The Comptroller, in contrast, argues that Section 171.103(a) sources receipts using a "place of transfer" approach, and therefore the Comptroller Rule is consistent with that statute.

In construing statutes, we begin with the plain language of the statute itself. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 422 (Tex. 2010). Under Section 171.103(a)(1), the portion of the taxable entity's gross receipts attributable to "its business done in this state" includes the following:

---

[3] NuStar implies that the Texas Supreme Court's opinion in *Lockheed Martin Corp. v. Hegar*, 601 S.W.3d 769 (Tex. 2020), demonstrates that the "place of market" should control our construction of Section 171.103(a). However, the Supreme Court expressly declined to address the statutory construction issue because the stipulated facts in *Lockheed Martin* prevented apportionment of the sales to Texas "under either party's interpretation of the apportionment statute." 601 S.W.3d at 779.

> (1) each sale of tangible personal property *if the property is delivered or shipped to a buyer in this state* regardless of the FOB point or another condition of the sale;

Tex. Tax Code § 171.103(a)(1) (emphasis added).

This statute is not ambiguous. Although the parties dispute how to interpret the phrase "the property is delivered or shipped to a buyer in this state," a statute is not necessarily ambiguous because that phrase in isolation may be amenable to multiple constructions. *See Health Care Serv.*, 652 S.W.3d at 43 ("Words that in isolation are amenable to two textually permissible interpretations are often not ambiguous in context."). Instead, a statutory text is ambiguous only "if the words yield more than one reasonable interpretation" or "multiple understandings" within the broader context of the statute. *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405–06 (Tex. 2016); se*e also Gabriel Inv. Grp. v. Texas Alcoholic Beverage Comm'n*, 646 S.W.3d 790, 797 (Tex. 2022). In context, Section 171.103(a)(1) yields a single reasonable construction: that sales of tangible personal property are apportioned based on where that property is delivered or shipped. *See Southwest Royalties*, 500 S.W.3d at 406 (concluding statutory language is not ambiguous "[b]ecause, in context, the statutory language is not subject to multiple understandings"). That is, under the plain and common meaning of this statutory language, whether a receipt counts as business done in Texas turns on where the buyer received the property, not where the buyer is ultimately located when they plan to use, sell, or otherwise dispose of the property.[4] *See Autohaus*, 514 S.W.3d at 902.

---

[4] The Comptroller argues that this Court has already held that Texas is a place-of-delivery state by "rejecting" the place-of-market approach in *Bullock v. Enserch Exploration, Inc.*, 614 S.W.2d 215, 217 (Tex. App.—Austin 1981, writ ref'd n.r.e.). Although this Court expressed agreement that the sale of natural gas was completed within Texas "in spite of the fact" that the natural gas was subsequently delivered to third parties outside of Texas, we also

9

NuStar, relying on the "last antecedent" canon of statutory construction, contends that the phrase "in this state" only and exclusively modifies "buyer," and therefore Section 171.103(a)(1) should only apply to in-state buyers. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) ("That canon of construction states that a qualifying phrase in a statute or the Constitution must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied."). However, we do not apply canons of construction when a statute is unambiguous and cannot use such canons to create ambiguity. *See Texas Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 133 n.8 (Tex. 2018) (rejecting reliance on last-antecedent canon "because the statutory language is unambiguous" and extrinsic aids cannot create ambiguity).[5]

Even assuming we could apply the last-antecedent canon to an unambiguous statute, that canon is inapposite here because it renders portions of the statute meaningless. If "in this state" modifies only the word "buyer" (thereby making only the location of the buyer relevant for apportioning under the franchise tax), then the phrase "if the property is delivered or shipped" becomes superfluous. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that

clarified in that same opinion that the stipulated facts in that case made it "self-evident" that the taxpayers "are not sellers of natural gas to out-of-state buyers." *Id.*; *see also Lockheed Martin*, 601 S.W.3d at 776 (describing *Enserch* as holding that "a sale of goods to a Texas purchaser is not transformed into a sale to an out-of-state buyer merely because the Texas purchaser resells the goods to that out-of-state buyer").

[5] NuStar also contends that considering the last-antecedent canon is "necessary" to determine whether the statute is unambiguous, but it has failed to cite any example of any court applying the canon in that context. *See, e.g., City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language.").

renders any part of the statute meaningless or superfluous."); *see also PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015) ("Similarly, we presume the words in a statute are selected with care and we interpret them in a manner that gives meaning to all of them without disregarding some as surplusage."). We must presume "the legislature chose a statute's language with care," *Hallmark Marketing*, 488 S.W.3d at 798, and that the phrase "if the property is delivered or shipped" was "chosen for a purpose," *id.* Relying on the last-antecedent canon in the way advanced by NuStar would work to create an ambiguity in the statute, not resolve one. *See In re Zook*, No. 03-21-00180-CV, 2021 WL 2964264, at *2 (Tex. App.—Austin July 15, 2021, orig. proceeding) (mem. op.) ("That is, construction canons may be relied on to help interpret ambiguous language but cannot be used to create ambiguity.") (citing *Texas Health Presbyterian*, 569 S.W.3d at 133 n.8); *see also Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 41.

NuStar also contends that the apportionment statute is derived from model language in the Uniform Division of Income for Tax Purposes Act (UDITPA) and the 1967 Multistate Tax Compact, and therefore, we should follow the approach of other states who have interpreted that statute. NuStar is correct that the apportionment statute is based on similar language in the Multistate Tax Compact. *See* Tex. Tax Code § 141.001 (Adoption of Multistate Tax Compact); *see also U.S. Steel Corp. v. Multistate Tax Comm'n*, 434 U.S. 452, 457 & n.6 (1978) (noting that UDITPA is "contained" in article IV of Multistate Tax Compact and "allows multistate taxpayers to apportion and allocate their income under formulae and rules set forth in the Compact or by any other method available under state law"). The Multistate Tax Compact also established the Multistate Tax Commission (MTC) and authorized the MTC to adopt advisory uniform administrative regulations. *See U.S. Steel Corp.*, 434 U.S. at 456–57; *see also*

Tex. Tax Code § 141.001, art.VI (establishing MTC), art. VII (empowering MTC to adopt uniform regulations "for any phase of the administration of" certain uniform tax laws). The MTC has adopted model regulations construing UDITPA to "attribute[] sales to the state in which they are 'delivered . . . to a purchaser,' whether or not that is the ultimate destination of the goods." Jerome R. Hellerstein et al., 1 *State Taxation: Constitutional Limitations and Corporate Income and Franchise Taxes* ¶ 9.18[1][a], at 9-252 (3d ed. 2011); *see also Model Gen. Allocation & Apportionment Regulations* Reg.14.16(a)(4) (Multistate Tax Comm'n 2018) (defining "purchaser within this state" to include "the ultimate recipient of the property if the taxpayer in this state, at the designation of the purchaser, delivers to or has the property shipped to the ultimate recipient within this state"). Other states have implemented statutory schemes consistent with this "place of delivery" approach. *See, e.g.*, Colo. Rev. Stat. § 39-22-303.5(b)(I) (apportioning sales of tangible personal property to Colorado if "property is delivered or shipped to a purchaser in Colorado regardless of the f.o.b. point or other conditions of the sale"); 1 Colo. Code Regs. § 201-2:39-22-303.6-6 (explaining administrative rules "are intended to conform to the Multistate Tax Commission's model statute and regulation except when those model provisions are inconsistent with Colorado statute"); N.M. Stat. § 7-5-1 (adopting Multistate Tax Compact); N.M. Admin. Code 3.5.17.8 (adopting administrative rules consistent with MTC model regulations); *see also* Tex. Gov't Code § 311.028 ("A *uniform act* included in a code shall be construed to effect its general purpose to make *uniform the law of those states that enact it.*" (emphases added)).

NuStar points to out-of-state court decisions, such as *Powerex Corporation v. Department of Revenue*, 346 P.3d 476 (Or. 2015) (en banc), and *Department of Revenue v. Parker Banana Co.*, 391 So.2d 762 (Fla. Dist. Ct. App. 1980), and contends that the

12

"overwhelming majority" construe similar apportionment language as considering the ultimate destination of the tangible goods. *See* Hellerstein, 1 *State Taxation* ¶ 9.18[1][a], at 9-256 (stating that "overwhelming majority" of courts have construed UDITPA as "embodying an ultimate-destination rule"). Although we give "additional weight" to decisions in other states when interpreting uniform laws generally, *Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89, 106 (Tex. 2017), the differing approaches of the states indicate that there is not an "uniform" implementation of the Multistate Tax Compact apportionment provision. *See Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642, 646 (Minn. 1982) ("At best, the authorities cited by the parties indicate that there is not a[n] unanimity of opinion as to the meaning of the phrase 'within this state' in section 16 of UDITPA."). This is because those out-of-state decisions may not address the particular issue before us[6] or because subsequent legislative action complicates our understanding of those decisions.[7] This is also because each state, including

---

[6] NuStar contends that the Oregon Supreme Court in *Powerex* applied the "ultimate destination" test in ruling that certain natural gas sales to out-of-state purchasers were not sales in Oregon. *Powerex Corp. v. Department of Revenue*, 346 P.3d 476, 486 (2015) (en banc) (holding natural gas sales were not in Oregon). Although the Powerex court undertook an analysis of the apportionment issue and suggested that the ultimate destination test was the best reading, *id.* at 483, the *Powerex* court ultimately explained that there is no universal agreement on that interpretation and expressly declined to decide the issue, explaining that the lower tax court's "opinion obviates the need to do so." *Id.* at 483–84.

[7] The Florida court in *Parker Banana* held that the phrase "*within* this state" must modify only "purchaser," rejecting the State's "tortured construction" that the phrase actually only modified "delivered" but not "shipped." *Department of Revenue v. Parker Banana Co.*, 391 So. 2d 762, 763 (Fla. Dist. Ct. App. 1980). The *Parker Banana* court's analysis focuses heavily on the implications of the use of "within" in the statute, which has an overlapping but distinct meaning from "in." *Compare Within*, *Webster's Third New Int'l Dictionary* (2002) (defining prepositional form as "used as a function word to indicate enclosure or containment," as in "in the limits or compass of; not beyond"), *with In*, *id.* (defining prepositional form as "used as a function word to indicate location or position in space or in some materially bounded object"). Moreover, the Florida legislature thereafter amended its statute to explicitly reject consideration of the ultimate destination of the property. *See* Fla. Stat. § 220.15(5)(b)(1) ("Sales

13

Texas, has amended or modified the model language of the Multistate Tax Compact to fit within its own regulatory tax schemes and therefore is not enacting (or interpreting) identical statutory language, let alone uniform statutory tax schemes. *See Nathan v. Whittington*, 408 S.W.3d 870, 873 (Tex. 2013) (per curiam) (seeking to construe uniform laws "as consistent as possible with the constructions of other states that have enacted . . . *a similar provision*" (emphasis added)).

As the Texas Supreme Court has cautioned, the provisions in the Multistate Tax Compact, including the UDITPA apportionment provision, are not intended to be "immutable, binding contractual terms," *Graphic Packaging*, 538 S.W.3d at 106, and the State of Texas reserves its sovereign tax power to "administer[] its tax laws, including tax-base apportionment, without reference to or consideration of the other states' laws," *id.* at 102. Thus, even if the apportionment statute could be interpreted as being contrary to the approach of some states under the Multistate Tax Compact, "[n]othing in the Compact expressly prohibits the states from adopting an exclusive apportionment method that overrides the Compact's formula" nor expressly prevents Texas "from limiting, amending, or altogether deleting" the UDITPA provisions within the Multistate Tax Compact. *See id.* at 104–05.

Ultimately, "[w]e presume the legislature chose a statute's language with care, including each word chosen for a purpose while purposely omitting words not chosen." *See Hallmark Marketing*, 488 S.W.3d at 798. The only reasonable construction of Section 171.103(a)(1) is that the apportionment statute turns on where the business activity

---

of tangible personal property occur in this state if the property is delivered or shipped to a purchaser within this state, regardless of the f.o.b. point, other conditions of the sale, *or ultimate destination of the property, unless shipment is made via a common or contract carrier.*" (emphasis added)).

occurs; that is, the place of delivery controls for apportionment purposes even if the buyer is located out of state. *See Southwest Royalties*, 500 S.W.3d at 406. This construction gives effect to all the language in the statute and is consistent with the purposes undergirding the Multistate Tax Compact, namely, attributing sales to the state where they are delivered to the purchaser.[8]

We thus turn to NuStar's facial validity challenge of the subsections of the Comptroller's Rule. *See* 34 Tex. Admin. Code § 3.591(e)(29), (31). Although NuStar separately argues that the subsections (1) contravene specific statutory language; (2) run counter to the general objectives of the statute; and (3) impose additional burdens, conditions, or restrictions, *Office of Pub. Util. Counsel*, 131 S.W.3d at 321, all three arguments advanced the same fundamental premise: that the subsections of the Comptroller's Rule are contrary to the relevant statute because the Comptroller Rule applies a "place of delivery" approach to apportioning gross receipts. As explained above, however, applying a "place of delivery" construction is consistent with Section 17.103(a)(1), and therefore NuStar has failed to overcome the presumption that then-subsections (e)(29)(A), (C), (H), and (31) of the Comptroller Rule are facially valid and constitutional. *See Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 33. The trial court therefore did not err when it concluded that those provisions of the Comptroller's Rule were valid, granted the Comptroller's motion, and denied NuStar's motion. See *Valence Operating Co.*, 164 S.W.3d at 661. We overrule NuStar's sole issue on appeal.

---

[8] The Comptroller contends that the Legislature's adoption of new margin tax provisions while still using the same statutory language demonstrates legislative acceptance of the Comptroller's "place of delivery" construction. Because we interpret Section 171.103(a)(1) as unambiguous, however, the legislative acceptance doctrine does not apply. *See Rogers v. Texas State Bd. of Pub. Accountancy*, 310 S.W.3d 1, 7 (Tex. App.—Austin 2008, no pet.) ("The doctrine of legislative acceptance is a statutory construction aid that courts may use when the text of a statute is ambiguous.").

15

**CONCLUSION**

For these reasons, we affirm the trial court's order granting the Comptroller's motion for partial summary judgment and denying NuStar's motion for partial summary judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:   December 21, 2023